UNITED STATES, Appellee

v.

CHARLES HARVEY MARTIN, Seaman, U. S. Navy, Appellant

1 USCMA 674, 5 CMR 102

No. 451

Decided September 10, 1952

LCDR. John B. Marlais, USNR, and LT. Henry B. Nesbitt, USNR, for Appellant.

CAPT. Francis C. Foley, Jr., USMCR, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

On May 21, 1951, accused was convicted by summary court-martial for willful disobedience of an order from a superior officer in violation of Paragraph 2, Article 4, of the Articles for the Government of the Navy, 34 U.S.C. § 1200. His sentence to a bad-conduct discharge was approved by both the convening authority and the immediate superior in command, the latter remitting the punitive discharge on condition that the accused maintain a record satisfactory to his commanding officer for a period of six months. The finding and sentence were affirmed by the board of review in the office of The Judge Advocate General, U. S. Navy, and this Court granted accused's petition to review for the purpose of determining whether in view of the number of claimed errors the accused was denied a fair trial.

Accused was a member of the crew of the U.S.S. Sabine, attached to the Sixth Fleet in Mediterranean waters.

On May 15, 1951, an inspection was conducted on board the ship, and accused's locker was searched by one of the ship's officers. The search disclosed that the locker contained a great many cartons of cigarettes and this fact was called to the attention of the executive officer. He asked accused how he had obtained them and was told that they had been purchased while the ship was en route from the States to the Mediterranean area and prior to the time notice was given that cigarettes were rationed. The officer inquired as to what the accused intended to do with them and was told that they were for his personal use. Thereupon, the officer told accused to keep the cigarettes for personal use and not to use them for bartering.

Five days later the U.S.S. Sabine was at anchor in the harbor of a foreign port. One Barnett, chief commissary steward, had the quarterdeck watch from 10:00 p.m. to midnight. He was instructed by the duty officer that men would be coming back from

liberty and Barnett was to check with the dock sentry as to when to send a boat for them. During his tour of duty he walked back to the fantail where he found accused. Two Italian employees of a company which was supplying the ship with oil were also on the fantail. Their presence, however, was pursuant to their employment. Barnett asked accused what he was doing and accused replied nothing. Barnett observed a laundry bag by the side of accused, lying on deck, with a heaving line attached to it. He detached the line, opened the bag, and found that it contained twenty-six cartons of cigarettes which accused acknowledged were his. Barnett told accused that he should know better than to try to get rid of them, and accused said that he was having family trouble, that he had a heavy fine to pay, and needed the money.

Accused was charged with, and found guilty of, the following specification:

"In that [the accused] . . . while so serving on board the U.S.S. Sabine, having, on or about May 5, 1951, on board said ship, been lawfully ordered by one Earl S. Cheater, Lieutenant Commander, U. S. Navy, the executive officer of said ship, not to use cigarettes for bartering purposes, did, on May 10, 1951, then and there willfully disobey said lawful order."

Seven assignments of error are set forth in accused's petition for review. They assert that inadmissible testimony was erroneously received in evidence; that the order of the executive officer was illegal since it did not relate to a military duty; and that the evidence was insufficient as a matter of law to sustain the finding. The various contentions having to do with inadmissible testimony involve matters peculiar to this particular case, and are not likely to be repeated. In view of this and because of our disposition of the assignment regarding the sufficiency of the evidence we conclude a discussion of those contentions is unnecessary.

As to the matter of the legality of the order we conclude that the show-

676

ing in this case is sufficient to establish that the officer was ■ authorized under the circumstances to issue the order. We do not accept all of the limitations suggested by the accused. All activities which are ■ reasonably necessary to safeguard and protect the morale, discipline and usefulness of the members of a command and are directly connected with the maintenance of good order in the services are subject to the control of the officers upon whom the responsibility of the command rests. That the order related to accused's disposition of personal property owned by him does not render it illegal. Disorders arising out of transactions between members of the Armed Forces and nationals of other countries can be prevented by those in command even though the orders issued involved limitations on transferring of private property. Here, at the time the order was given, the ship was en route to a foreign port, where American cigarettes were at a premium and where black markets flourish. In view of the difficulties encountered in controlling under-cover transactions and the disorders they create, the authority of the executive officer could reasonably include any order or regulation which would tend to discourage the participation of American military personnel in such activities.

The question which gives us greater concern is that dealing with the sufficiency of the evidence to sustain the finding. From the evidence adduced we have no doubt that reasonable men could conclude that accused intended to barter the cigarettes, but this alone is not sufficient. Mere criminal intention is not pun- ■ ishable as an offense. There must be a criminal act or omission as well as the criminal intent. 22 CJS § 37, page 95. In Sherman v. United States, 10 F2d 17, the Circuit Court of Appeals, Sixth Circuit, stated the principle in the following words:

"It is contrary to the general principles of criminal law—except in

conspiracy—that the mere intent to violate the law, not followed by actual violation should be a crime. . . ."

Thus, the criminal intent must be accompanied or·followed by some overt act, and the nature and extent of such act is dependent upon the facts and circumstances of the case and the statute defining the crime. See State v. Ledford, 195 Wash 581, 81 P2d 830.

While the term "overt act" should not be given a forced or restricted construction, we do not think that by any reasonable construction can we go so far under the facts in this case as to hold the accused guilty of violating the order. There is a wide difference between the preparation for the commission of an offense and the commission of the offense itself, or even the attempt to commit it. The preparation consists in devising or arranging the means or measures necessary for the commission of the crime; the overt act must be something done in the commission of the crime itself, after the preparations are made.

The gravamen of the offense here charged is the violation of the order given. To hold the accused for that offense, the Government must show that he bartered the cigarettes. There is evidence to support a finding that the accused intended to use the cigarettes for such purposes and that he made some preparation to do so, but the record fails to show any act toward the actual commission of the offense. A barter is defined in Black's Law Dictionary, Fourth Edition, at page 191, as "A contract by which parties exchange goods or commodities for other goods." The act necessarily includes negotiations with another person. Assuming, for· the purposes of this opinion, that the accused brought the cigarettes to the fantail with the intent to barter with them and that he attached· them to the heaving line preparatory to disposing of them, still there is no showing that he had negotiated or was negotiating a contract with anyone. Some connection with other persons is necessary. Although there is evidence of the presence of two Italians on the fantail, the evidence shows that they were on board legally, and there is nothing which in any way indicates that they were carrying on negotiations or connected in any other way with the activities of the accused. Under such circumstances, their mere presence is not evidence of the missing element. Furthermore, there is no showing that the accused may have been dealing with other persons. Had the accused abandoned his venture immediately before the interruption, a crime would not have been committed, as he had not reached a point from which there was no retreat. What he might have done in the way of bartering had his activities not been interfered with by Barnett is a matter of speculation and conjecture. It is sufficient for the purposes of this case to say that at the time of his apprehension he had not as yet disobeyed the order.

Accordingly, the decision of the board of review is reversed and the case is returned to The Judge Advocate General, United States Navy with directions that the charges be dismissed.

Chief Judge QUINN and Judge BROSMAN concur.