UNITED STATES, Appellant

v

JAMES R. MILLDEBRANDT, Disbursing Clerk Second Class, U. S. Navy, Appellee

8 USCMA 635, 25 CMR 139

No. 10,203

Decided January 31, 1958

*Lieutenant Colonel Charles H. Beale, Jr.,* USMC, and *First Lieutenant Daniel P. Reardon, Jr.,* USMCR, were on the brief for Appellant, United States.

*Commander H. H. Brandenburg,* USN, was on the brief for Appellee, Accused.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

This case reaches us by certificate of The Judge Advocate General of the Navy and only the facts and circumstances necessary to a disposition of the questions certified by him will be related. A special court-martial inter alia found the accused guilty of willfully disobeying a lawful command of his superior officer, in violation of Article 90, Uniform Code of Military Justice, 10 USC § 890. The convening authority in his action affirmed only the lesser included offense of failing to obey a lawful order, contrary to Article 92, Uniform Code of Military Justice, 10 USC § 892.

A board of review in the office of The Judge Advocate General of the Navy reversed the findings and sentence but the reasons assigned for reaching that result were not unanimous. A majority of the board concluded that the order imposed upon the accused a duty which was inconsistent with his leave status and therefore was not a legal order. The third member of the board concluded that illegality of the order arose out of the nature and extent of the duty saddled on the accused. The Judge Advocate General of the Navy thereupon certified the case to us requesting that we answer the following questions:

"1. Was the order as stated in the specification of Charge I a lawful one?

"2. If so, was the accused required to comply therewith during a period of authorized leave?"

The operative facts necessary to place the questions in their proper perspective are as follows: During the latter part of 1956, the accused was heavily burdened with personal financial problems. In order to augment his income, he requested a thirty-day leave of absence during which time he anticipated civilian employment. The leave was granted but it was conditioned upon the accused making certain weekly reports. The officer authorizing the leave testified that he was required to submit a weekly written report to the executive officer on the accused's financial condition and to do that it was necessary that he receive progress reports from the accused. He therefore ordered the accused to report his financial transactions at certain specified times. The direction for the first period was not complied with and shortly thereafter a telegram was dispatched ordering him to report back to his command. There appears to be some question as to whether this telegram was ever received by the accused, but four days thereafter a second message was dis-

636

patched to him and, pursuant to the direction contained therein, he reported back to his station.

In order to answer the first question, it is necessary that we consider the facts alleged in the specification. The charge and specification here involved are as follows:

"Charge I: Violation of the Uniform Code of Military Justice, Article 90

"Specification: In that James R. Milldebrandt, Disbursing Clerk Second Class, U. S. Navy, Naval Administrative Command, U. S. Naval Training Center, San Diego, California, having received a lawful order from Lieutenant W. B. McDonald, Naval Administrative Command, U. S. Naval Training Center, San Diego, California, his superior officer, to report to him, Lieutenant McDonald, during the week beginning Monday, 5 November 1956 and ending Friday, 9 November 1956 concerning his, the said Milldebrant's indebtedness, did, at San Diego, California, on or about 9 November 1956, willfully disobey the same."

The first certified question is not stated aptly, for the specification does not give us sufficient information to ascertain the full extent and scope of the report to be submitted by the accused. Pretermitting the duty to report while on leave, the ■ parties agree that an order to report about the status of indebtedness may be lawfully issued by a commanding officer. For the purpose of this case, we need not express an opinion on the concession, but that is not to say that every order directing an accused to make a full disclosure about his personal business may be valid. A command to file a complete and comprehensive report may compel an accused to disclose transactions which have a tendency to incriminate him, or which might subject him to the imposition of sanctions, or which would breach confidential communications. Furthermore, such a directive might require him to publicize financial involvements which are of no concern to the military community. Certainly the legality or illegality of the order must be deter-

mined by its terms, and here the allegations of the specification leave everything to the imagination of the pleader. Unless orders concerning personal dealings by their terms are limited to the furnishing of information which essentially does not narrow or destroy the rights and privileges granted to an accused by the Code or other principles of law, they should not be considered as legal. From the foregoing and in view of the general nature of the pleading, it becomes necessary to look to the facts to determine the sweep of the order given.

In this instance, the evidence found in the record is of no assistance in determining the legality or ■ illegality of the order. The officer merely directed the accused to report to him on his financial affairs during stated periods. The nature of the information ordered to be furnished is not shown and, for aught that appears, the accused might have been required to give a detailed statement of every financial transaction engaged in by him while off duty. It should be apparent that if the order was as broad as that, the accused might be prosecuted for failure to disclose information of a confidential or incriminating nature. While we do not pass on the legality of all orders dealing with personal business, we do not believe the authority of a commanding officer extends to the point that an accused can be ordered to make all facets of his personal dealings public. By way of illustration to support our theory, we mention one fact set out in accused's pretrial statement. He concedes obtaining some money but says he lost it gambling. Had he been interrogated about that transaction, he would have been entitled to a prior warning, but under the order given he was required to disclose an incriminating fact without the benefit of the privileges accorded to him by Article 31 of the Code. Accordingly, under the facts of this case, we believe the order given to be so all-inclusive that it is unenforceable. Certainly we believe that, unless an order of this type is so worded as to make it spe-

**637**

cific, definite, and certain as to the information to be supplied so that it can be measured for legality, the only penalty which can be enforced is revocation of the leave.

The second question is one of first impression in this Court, and counsel argue the issue as though there were two conflicting concepts. The first is that a member of the Armed Forces on leave is not required to perform military duty. The second is that certain military orders given to a member of the Services prior to or while on leave must be obeyed. If the two are not reconcilable, a doctrine we do not necessarily support, we believe that the nature of this order brings it under the former rule. Winthrop, Digest of Opinions of The Judge Advocate General of the Army, 1895, page 29, has this to say:

"10. An officer or soldier on leave of absence cannot in general be made liable to a charge of disobedience of orders, except indeed where required by a positive order, issued on account of a public emergency, to return before his leave is expired, and failing to comply with such requirements. XXXIX, 340."

The same author in his Military Law and Precedents, 2d ed., 1920 Reprint, page 91, has this to say:

"JURISDICTION DURING ABSENCE ON LEAVE OR AS A PRISONER OF WAR. Here should be noticed a class of cases in which an officer or soldier, though fully in the service, is, in a measure, not subject to the military jurisdiction.

"Thus, when an officer or soldier is duly absent from his post or station upon a leave of absence or furlough, he ceases for the time to be subject to the orders of his commander, or indeed to any orders except—in the event of some public exigency or grave occasion requiring his services—an order discontinuing his leave and directing him to return to his regiment, &c., or otherwise disposing of him as the public interest may require. During the pendency of his leave, therefore, he cannot well be guilty of a breach of the discipline of the command from which he

is absent, or of a neglect of duty, or disobedience of orders, (except as above indicated,) or mutiny, or subject to a military trial therefor."

It seems reasonable to conclude that when an enlisted man is granted leave, he ought not to be subject ▮ to orders requiring him to perform strictly military duties unless their performance is compelled by the presence of some grave danger or unusual circumstance. It seems a bit inconsistent to authorize a period of absence from duty and at the same time require the person on leave status to return intermittently to a duty status. A serviceman should be either on a leave status or a duty status, and when on the former he should not be sadled with duties which can await his return. Undoubtedly there may be instances when complete ▮ freedom from military duties cannot be the rule, for a serviceman on leave must hold himself amenable to orders of revocation and a commander should be authorized to direct him to furnish changes of address or to report where he may be reached for recall to duty if an emergency arises. However, we need not concern ourselves with the exceptions to the general rule, for in this instance we see no immediate military necessity for a commander to issue this particular type of order. It is to be remembered that the order was not to contact the creditor and thus improve the civilian-service relationship; it was to file a report. That order was not necessary to the successful pursuit of any military mission, and it was not required to maintain the morale, discipline, or good order of the unit or to keep the military free from disrepute. Assuming arguendo that the financial irresponsibility of service people has a tendency to bring discredit on the military, a report could have been furnished upon return. No doubt the officer who issued the order was prompted to do so by his desire to have the accused use the leave for the purposes intended, and obviously the latter breached the faith of those who were working to help him, but they were not left without effective measures of relief if the accused failed to

comply. The leave orders were subject to revocation when accused failed to comply with the conditions imposed, and this method of returning the accused to his unit was employed by the Naval authorities when the reports were not forthcoming. It, therefore, appears to us that failure to obey this type of order might be made the basis for revoking authorized leave, but it should not be considered a crime when the accused has been freed from performance of all but extraordinary military duties. The basis of a criminal prosecution for failing to obey an order rests on a duty to comply. If there is any duty on a serviceman to furnish personal financial data, it cannot be made mandatory while he is not on a duty status. We will leave for future determination how far military commanders may go in carrying out a financial responsibility program, if at all, but for the purpose of this case, we hold that the duty imposed was illegal in the light of accused's status at the time it was disobeyed.

The decision of the board of review is affirmed.

Judge FERGUSON concurs in the result.

QUINN, Chief Judge (concurring in the result) :

I have serious doubts about the validity of a number of the implications of the present opinion. Among them are the following: (1) That we approve Colonel Winthrop's dictum that military personnel on leave are "not subject to the military jurisdiction"; (2) that when an order can be construed as legal or illegal, the latter is preferable to the former. Cf. United States v Trani, 1 USCMA 293, 3 CMR 27; and (3) that it is a rule of law rather than a statement of policy that persons on leave cannot be required to perform "strictly military duties," unless "compelled by . . . some grave danger or unusual circumstance." However, I agree with the result.

Persons in the military service are neither puppets nor robots. They are not subject to the willy-nilly push or pull of a capricious superior, at least as far as trial and punishment by court-martial is concerned. In that area they are human beings endowed with legal and personal rights which are not subject to military order. Congress left no room for doubt about that. It did not say that the violation of *any* order was punishable by court-martial, but only that the violation of a *lawful* order was. Article 92, Uniform Code of Military Justice, 10 USC § 892.

The legality of an order is not determined solely by its source. Consideration must also be given to its content. If an order imposes a limitation on a personal right, it must appear that it is "reasonably necessary to safeguard and protect the morale, discipline and usefulness of the members of a command and . . . directly connected with the maintenance of good order in the services." United States v Martin, 1 USCMA 674, 676, 5 CMR 102. I suppose that no one would doubt the invalidity of an order which directs military personnel who purchase an automobile to buy only from a particular manufacturer or the illegality of an order which requires military personnel who telephone family or friends by long distance to call on a person to person basis, instead of station to station. In cases of this kind, we must look closely to the connection between the personal act required by the order, and the needs of the military service. United States v Martin, supra; see also United States v Voorhees, 4 USCMA 509, 16 CMR 83; cf. United States v Noriega, 7 USCMA 196, 21 CMR 322. As the principal opinion points out, the order here is completely unrelated to any requirement of the military service. On that basis it is not a "lawful order" within the meaning of Article 92 of the Code. I would, therefore, answer the first certified question in the negative and affirm the decision of the board of review.