UNITED STATES, Appellant

v

PAUL S. NATION, JR., Seaman Apprentice,
U. S. Navy, Appellee

9 USCMA 724, 26 CMR 504

No. 11,500

Decided October 3, 1958

*Commander Louis L. Milano,* USN, argued the cause for Appellant, United States.

*Commander Charles Timblin,* USN, argued the cause for Appellee, Accused. With him on the brief was *Commander David Bolton,* USN.

*Lieutenant Colonel Robert W. Michels,* Appellate Government Counsel, and *Captain John W. Fahrney,* Associate Appellate Government Counsel, United States Air Force, on amicus curiae brief.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

This accused was charged with disobeying a lawful general regulation, in violation of Article 92, Uniform Code of Military Justice, 10 USC § 892. Tried and convicted by special court-martial, he was sentenced to a bad-conduct discharge, partial forfeitures, confinement at hard labor for six months, and reduction in rank to seaman recruit. The convening authority lessened the punishment but the supervisory authority ordered a rehearing, finding that a defense motion for a continuance was meritorious and had been unfairly denied by the court. The second trial resulted in the accused's conviction of the same offense with the imposition of the same punishment as was originally approved by the convening authority. Intermediate reviewing authorities again reduced the sentence and provided for an automatic remission of the punitive discharge. A board of review in the office of The Judge Advocate General, United States Navy, set aside the conviction and ordered the charge dismissed, having decided the regulation in question, as applied to this accused, was not a lawful order. The correctness of the board of review's holding has been certified to this Court by The Judge Advocate General of the Navy, pursuant to Article 67(b)(2) of the Uniform Code of Military Justice, 10 USC § 867.

The regulation, promulgated by the Commander, United States Naval Forces, Philippines, on April 7, 1955, set out a procedure which, at the time of this offense, all members of his command had to follow in order to obtain his official permission to marry. The

regulation also embodied a proscription that all military personnel were forbidden to enter into wedlock without first obtaining his written consent. By competent documentary evidence, the Government proved that on January 19, 1957, a marriage had been duly performed in Quezon City, Philippines, between the accused and a Philippine female national. In addition, it was stipulated that on this date the accused was attached to a Naval unit in the Philippines, and a Government witness who had investigated the matter testified the accused had not received the requisite written permission to marry. The accused was shown, however, to have made application on July 16, 1956, to marry in accordance with the procedure outlined by the regulation. That application was admitted in evidence and it included all the personal data concerning himself and his prospective bride which was required by the regulation in question, including the fact that he had known his intended spouse for eleven months. Certain required enclosures, such as a birth certificate and an affidavit of parental consent, were also listed as included with the application. The testimony of Government witnesses established that the accused had submitted the application but it was not forwarded to the Commander, as prescribed by the regulation because "it lacked sufficient enclosures." This point was not further elaborated during the trial, nor were the submitted enclosures placed in evidence. But the document containing accused's formal request to marry itself indicates completeness with regard to all enclosures which were to be supplied.

The regulation in issue requires that a request for permission to marry should be prepared by the applicant with the assistance of his chaplain and, when completed, endorsed by the applicant's commanding officer, which shall include "a positive recommendation of approval or disapproval and any other information he deems advisable regarding the applicant's performance of duty and moral character." The regulation is distinguished by the following requirement, viz.:

"In order to prevent ill-considered marriages between U. S. military personnel and aliens, requests for permission to marry will normally be returned to the applicant via his or her commanding officer with the notification that the request will be considered after a lapse of six (6) months from date of original submission, provided the applicants reaffirm their desire to marry at that time. During this six (6) months waiting period, the applicant must remain on duty in the area of command of Commander U. S. Naval Forces Philippines."

Having waited six months and three days since the date he placed his application in official channels, the accused married without the Commander's written permission. However, he is not criminally accountable for his conduct unless the restrictions placed upon his right to marry by the regulation were lawful. General regulations which do not offend against the Constitution, an act of Congress, or the lawful order of a superior are lawful, if "reasonably necessary to safeguard and protect the morale, discipline and usefulness of the members of a command and . . . directly connected with the maintenance of good order in the services." United States v Martin, 1 USCMA 674, 5 CMR 102; paragraph 171, Manual for Courts-Martial, United States, 1951; United States v Milldebrandt, 8 USCMA 635, 25 CMR 139.

There is no need in this case to probe the question of whether the right of servicemen to marry while serving overseas is the proper subject of reasonable control and regulation by appropriate military commanders. This for the reason that the facts of record in the case at bar, while underdeveloped, convince us that the regulation is so broad and unreasonable that it cannot be used as a basis for this prosecution. We need not consider all the arbitrary proscriptions imposed by the document for one alone will establish the point. The quoted provision establishes at least a six-month postponement of marriage after the serviceman submits his

application. We say at least six months as it will not be acted upon by the Commander until the expiration of that period, and then there is no assurance the action will be either expeditious or favorable. Only three exceptions are made with respect to the waiting period requirement. They are as follows:

"Under exceptional circumstances Commander U. S. Naval Forces Philippines *may* give consideration to a request for waiver of the six (6) months waiting period. The following and only the following will be considered as exceptional circumstances:

"(1) Pregnancy in the early stages.

"(2) Applicant is parent of child born out of wedlock.

"(3) Both prospective spouses are of the same race and nationality."

The regulation thus imposes upon military personnel of the Command such as this accused, who did not bring himself within one of the exceptions, the necessity of waiting six months before his application will be processed. If by chance his application is found incomplete in some respect—which may have occurred in this instance—other interminable delays may be encountered. This delay is sought to be justified under the theory that it is a "cooling-off" period which will "prevent ill-considered marriages between U. S. military personnel and aliens." Without arguing against such paternalistic motivation, we conclude that an arbitrary selection of a six-month period before an application will be considered is unreasonable. Particularly is that true in this instance. This accused had been acquainted with his intended spouse for almost a year before he applied for permission to marry her. He waited the full period before he took the marriage vows. His decision, then, cannot reasonably be made to appear hasty. The regulation does not purport to bar marriages between members of the overseas command and aliens which are entered with propriety, but its requirements go a long way toward that objective. If a waiting period is believed needful to discourage youthful service-men from entering into improvident marriage contracts, its length ought to have some reasonable relationship to the maturity of the persons involved and purposes to be accomplished. Furthermore, the processing of the application should go on so that the applicant will not be required to wait the full period without information on his prospective plans and then find himself faced with further delays. In the case of this particular regulation, age, experience, maturity, and length of courtship had no bearing as the six-months waiting period applied to all.

To make the point clear, assuming the accused met all the conditions precedent for a proper request for permission to marry his prospective bride, the regulation prohibited a waiver of the six-months waiting period even though he had courted his fiancee for nearly a full year. If the regulation, which does not regard the entrance into such a marriage contract of itself disreputable or detrimental to the morale, discipline, or good order of the military community involved, had as one of its purposes the avoidance of impetuous marriages, it should have made some allowance for marriage of couples who have known each other long enough, in the normal course of events, to arrive at a deliberate decision to marry. For a commander to restrain the free exercise of a serviceman's right to marry the woman of his choice for six months just so he might better reconsider his decision is an arbitrary and unreasonable interference with the latter's personal affairs which cannot be supported by the claim that the morale, discipline, and good order of the command require control of overseas marriages.

For this reason alone, the board of review was correct in deciding that this accused did not violate a regulation which was lawful. The decision of the board of review is affirmed.

QUINN, Chief Judge (concurring):

I concur generally in the principal opinion. I also think it appropriate to call attention to the other aspects of the regulation discussed by the board of review.

FERGUSON, Judge (concurring in the result) :

I concur in the result. My decision is predicated upon that of the board of review below which found the order to be illegal.