740

**UNITED STATES**

v.

**Captain Kent W. LEHMAN, 506–62–1039,
United States Air Force.**

**ACM 22344.**

U. S. Air Force Court of Military Review.

28 June 1978.

Appellate Counsel for the Accused: Mr. Donald A. Timm, Seoul 100, Korea. Colonel B. Ellis Phillips and Major Gary C. Smallridge.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Alvin E. Schlechter.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

### DECISION

ORSER, Judge:

Tried by a general court-martial, with members, the accused was convicted, pursuant to his pleas, of one specification of conspiracy to violate a lawful general regulation prohibiting the importation of goods into the Republic of Korea for personal gain or profit, and six specifications of violating the same general regulation by importing specified goods into the Republic of Korea for the purpose of realizing gain or profit, in violation of Articles 81 and 92 of the Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892. The approved sentence, on the basis of a pretrial agreement, provides for a dismissal from the service, confinement at hard labor for one year, forfeiture of all pay and allowances and a fine of $6,000.00.

Except as discussed below, the errors assigned by the accused's trial and appellate defense counsel are without merit or were thoroughly considered by the staff judge advocate in his review and properly resolved adversely to the accused.

■ With specific reference to the initial error so assigned, we disagree with counsel's contention that the provision of the general regulation upon which the prosecution was based is fatally overbroad. The

challenged provision, paragraph 16e, United Nations Command/United States Forces Korea/Eighth Army Regulation 27–5, 6 May 1975, provides that personnel will not:

Use their customs-free privileges regarding the importation of goods into and from the ROK (Republic of Korea) for the purpose of realizing personal gain or profit.

As was declared by the United States Court of Military Appeals in *United States v. Nation,* 9 U.S.C.M.A. 724, 26 C.M.R. 504, 506 (1958):

General regulations which do not offend against the Constitution, an act of Congress, or the lawful order of a superior are lawful, if "reasonably necessary to safeguard and protect the morale, discipline and usefulness of the members of a command and . . . directly connected with the maintenance of good order in the services." *United States v. Martin,* 1 U.S.C.M.A. 674, 5 C.M.R. 102; paragraph 171, Manual for Courts-Martial, United States, 1951;[1] *United States v. Milldebrandt,* 8 U.S.C.M.A. 635, 25 C.M.R. 139.

In our opinion, the right of servicemen to engage in personal contractual enterprises while serving in Korea is a matter which is properly subject to reasonable control and regulation. The regulatory provision in question is manifestly designed to assist the United States Forces in preventing black-marketing and abuse of the customs and tax privileges granted to military personnel pursuant to the Status of Forces agreement between the United States and the Republic of Korea. The appellate defense assertion notwithstanding, the circumstances of this case reveal no indication that the directive is arbitrary, capricious, overly broad in scope, or imposes an unjust limitation on a personal right of the accused. See *United States v. Wartsbaugh,* 21 U.S.C.M.A. 535, 45 C.M.R. 309 (1972), and cases cited therein. See also *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *United States v. Powell,* 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975);

*Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (all cited by appellate government counsel in their brief).

We also disagree with defense assertions that the six specifications of Charge II, which were treated separately at trial, are multiplicious for sentencing purposes, and, on that basis, the accused's plea of guilty was improvident due to a substantial misunderstanding as to the correct maximum punishment.

In each of the specifications in question the accused is charged with violating the earlier quoted paragraph of a regulation of general application by importing customs-free property into the Republic of Korea for the purpose of personal gain or profit. Specification 1 recites that during the period of August 1976 to March 1977, the accused imported into Korea specified property of a value of about $9,606.05 from military mail order services. Specifications 2 through 6 reflect further violations of the identical provision of the regulation at specified times during the August 1976 to March 1977 period shown in Specification 1. Unlike Specification 1, however, these specifications do not allege that the accused, acting alone, imported the property into Korea directly through military mail order services. Instead, three of the specifications recite that the property the accused unlawfully imported into Korea was obtained from specified Air Force personnel. The remaining two specifications recite further violations of the regulation wherein the accused is alleged to have acted in conjunction with other identified individuals in accomplishing his purpose.

Both during the inquiry into the providency of the guilty plea and in his pre-sentencing instructions to the court members, the military judge treated all offenses as separate for punishment purposes. Thus, he advised the accused and the court that the maximum punishment included confinement at hard labor for fourteen years; two years for the conspiracy offense and two

---

1. See Manual for Courts-martial, 1969 (Rev.), paragraph 171.

years each for the six substantive violations of Article 92. It is the defense position that Specifications 2 through 6 of Charge II are multiplicious with Specification 1 of that charge. On that basis they urge that the correct maximum confinement totals only four years.

The defense relies principally on the case of *United States v. Maynazarian,* 12 U.S.C. M.A. 484, 31 C.M.R. 70 (1961), in support of their assertion of multiplicity. In *Maynazarian,* the United States Court of Military Appeals was confronted with a situation in which the accused had been convicted of two specifications of larceny (by embezzlement). The first alleged he stole the sum of $2,698.37, property of the United States, during the period of 26 December 1959 to 5 May 1960. The second alleged he stole $350.60, property of the United States, on or about 20 April 1960, a date within the period covered by the blanket allegation of the first specification. At trial, the judge treated the two offenses separate for sentencing purposes.

Having scrutinized the record, the Court observed they had found nothing to negate the fair probability that the second larceny was embraced in the first general charge. Apart from the strict problem of multiplicity thus disclosed, however, the Court, citing federal authority, further declared that it was prejudicially improper for the government to concurrently

> charge an accused with a general course of misconduct over a stated period of time and to select from that embezzlement a specific act to be alleged as a separate offense.

Id. at 72, citing *O'Neill v. United States,* 236 F.2d 636 (C.A. 6th Cir.) (1956) and *Smith v. United States,* 211 F.2d 957 (C.A. 6th Cir.) (1954).

Although on initial perusal the instant case may appear sufficiently similar to *Maynazarian* to require the same conclusion, upon careful scrutiny of the charges and the attendant circumstances it is clear the cases are distinguishable. In *Maynazarian,* of course, the method of charging was such that the Court of Military Appeals

could not determine whether the sum charged in the second specification was included in the larger amount alleged in the general count. Here, by contrast, the accused was charged with multiple specific violations of the regulation, each violation identified by item of property unlawfully imported so as to clearly show there was no duplication of charges. As noted by appellate government counsel, as drafted, the pleadings present no problem of double jeopardy condemned by the Court in *Maynazarian.* See *United States v. Modesett,* 9 U.S.C.M.A. 152, 25 C.M.R. 414 (1958).

Of additional pertinence, in the case at hand the multiple violations contained in the general specification were preferred as individual violations of the regulation. They were combined into one specification when the charges were referred to trial in order to simplify what otherwise would have been a complex and tedious process of proof. Such action was extremely beneficial to the accused, obviously, for rather then being tried for numerous separate violations of the regulation involving a combined maximum punishment of many years confinement, the consolidation resulted in a diminution of the maximum punishment to a total of two years confinement. See *United States v. Means,* 12 U.S.C.M.A. 290, 30 C.M.R. 290 (1961); *United States v. Hall,* 6 U.S.C.M.A. 562, 20 C.M.R. 278 (1955).

The dates alleged in the remaining specifications are admittedly encompassed within the lengthy period of time alleged in Specification 1. Unlike *Maynazarian,* however, these violations were not carved out of a general course of misconduct contained in Specification 1 to be alleged as separate offenses. Rather, Specification 2 through 6 had separate identity from the beginning and retained that identity at the time the multiple violations which the accused committed were, for reasons of simplicity, combined into one specification.

Although the object in each of the six specifications is the same, the other circumstances are decidedly different. As indicated, each separate offense contained in Charge II involves different property, dif-

ferent individuals, and a different means by which the accused accomplished his unlawful purpose. On the basis of the particulars referenced, we find the specifications to be sufficiently dissimilar to justify their separate treatment. See generally Manual for Courts-Martial, 1969 (Rev.), paragraphs 26 and 28.

The final defense contention meriting address concerns a deficiency in the post-trial review of the staff judge advocate. In the section of the review devoted to clemency, the reviewer, after noting that clemency evaluations had been submitted by the accused's commander, first sergeant, headquarters squadron commander, and two duty supervisors, declared that none of the evaluators had recommended clemency. In fact, the post-trial clemency report,[2] incorporated into the review by reference, discloses that one of the two duty supervisors, on the asserted basis of the accused's excellent work performance and his willingness to perform, recommended clemency in the form of a reduction in the confinement to six months and a reduced fine to $6,000.00.

The review of the staff judge advocate was duly served on the defense counsel pursuant to the mandate of *United States v. Goode,* 1 M.J. 3 (C.M.A.1975). In his response, the counsel noted the reviewer's error and requested that the review be changed to correctly reflect the duty supervisor's recommendation. Although the defense counsel's response should have alerted the reviewer to the error in his review, he took no supplemental action to correct it. Thus, the convening authority was furnished *conflicting information concerning whether any of those who knew the accused had recommended clemency.*

We grant that in some cases a defense counsel's detection of a minor review deficiency such as an obvious spelling or grammatical error, would require no response by the staff judge advocate. In this case, however, we believe it was incumbent upon the staff judge advocate to affirmatively correct his error in some manner before the convening authority acted upon the case. Here, the problem is compounded by a comment in the post-trial clemency report attached to the review. In the report, the clemency evaluator, after reciting the referenced recommendation for clemency, commented that such recommendation "should not be considered or if considered severely limited," because it was based on post-arrest behavior of the accused. The author of the clemency report elaborated that only pre-arrest behavior and actions should be considered in determining the extent of the sentence. In so limiting the factors that ought to be considered in the determination of an appropriate sentence the clemency evaluator was manifestly in error. See generally Manual for Courts-Martial, supra, paragraphs 77 and 88; Air Force Manual 111–1 (C–2), paragraph 7–5, 8 October 1976.

In his review, the staff judge advocate should have clarified the faulty analysis in the clemency report. Unfortunately, however, instead of doing so, he exacerbated the situation by his erroneous remark that no one had recommended clemency. In the context of the review as a whole, we cannot discount the possibility that the reviewer's comment was understood by the convening authority as implying agreement with the clemency evaluator's reasoning. Thus, the clemency section of the review is misleading in spite of the defense counsel's notation of the error in his *Goode* response.[3]

---

2. Air Force Manual 111–1 (C–2), paragraph 7–5, 8 October 1976.

3. This problem would have been obviated had the reviewer heeded the advice of now Chief Judge Early in his concurring opinion in *United States v. Hardesty,* 1 M.J. 780, 782 (A.F.C.M.R. 1976). There, in speaking of the preferred handling of responses submitted by defense counsel pursuant to *United States v. Goode,* 1 M.J. 3 (C.M.A.1975), Judge Early opined:

[W]hen a substantive challenge with which the staff judge advocate agrees has been submitted by defense counsel, it is incumbent upon the staff judge advocate to indicate such agreement in some manner before the officer exercising general court-martial jurisdiction acts upon the case. Obviously, assuming that the review is not erroneous, inadequate or misleading in some manner, a written expression of disagreement with the

Although we could direct a new review and action to remedy the error, we believe the interests of justice can best be served at this date by the alternative of sentence reassessment action by this Court. Having accordingly reassessed the punishment on the basis of the review error discussed, and in light of the record as a whole, we find appropriate only so much therefore as provides for a dismissal from the service, confinement at hard labor for nine months, forfeiture of all pay and allowances and a fine of $6,000.00. The findings of guilty and sentence, as modified, are

AFFIRMED.

EARLY, Chief Judge, and HERMAN, Judge, concur.

ARROWOOD, Judge, not participating.

defense counsel's comments is not necessary or even desirable. In this way, compliance with the *Goode* mandate will assure correction of any deficiencies in a post-trial review at the earliest possible moment.