UNITED STATES

v.

**Wayne R. DYKES, 267 57 8609, Private First Class (E–2), U. S. Marine Corps.**

**NCM 78 0983.**

U. S. Navy Court of Military Review.

Sentence Adjudged 7 April 1978.

Decided 19 Dec. 1978.

LT Christopher C. Henderson, JAGC, USNR, Appellate Defense Counsel.

LT Richard A. Joyce, JAGC, USNR, Appellate Government Counsel.

Before BAUM, MICHEL and GRANGER, JJ.

MICHEL, Judge:

At a special court-martial bench trial appellant was found guilty, pursuant to his pleas, of three violations of Article 86, five violations of Article 92, and one violation of Article 121, UCMJ, 10 U.S.C. §§ 886, 892, 921. His sentence, as modified below to conform to the terms of the existing pre-

trial agreement, extends to reduction to pay grade E–1, confinement at hard labor for 90 days, forfeiture of $210.00 pay per month for 4 months, and a bad-conduct discharge.

Appellant now, for the first time, brings forth the following allegation:

THAT SECTION OF THE GENERAL ORDER SET FORTH IN SPECIFICATION 3 OF ADDITIONAL CHARGE II [sic] WHICH PURPORTS TO PROHIBIT POSSESSION OF CIGARETTE ROLLING PAPER OR PIPES IS AN UNREASONABLE DEPRIVATION OF A RIGHT NOT RELATED TO THE PERFORMANCE OF A MILITARY DUTY, AND THUS VIOLATION OF THAT SECTION OF THE GENERAL ORDER IS NOT A VIOLATION OF ARTICLE 92, UCMJ.

In the case *sub judice* there has never been a defense contention that the order in question[1] was not a general order, that appellant at the time and place alleged[2] had no duty to obey the order, or that appellant did not violate the order. Furthermore, although presented an opportunity to do so at trial, the defense specifically declined to raise a constitutional challenge to the order in question, whether on the basis of vagueness or otherwise. A similar opportunity was afforded appellate defense counsel, who failed to raise an issue of constitutionality. For purposes of this appeal, appellant raises the limited contention that he has been subjected to an order which bears no proper relationship to mili-

1. That order was published as part of Enclosure (2) to Wing Order 11101.7B dated 2 November 1977, as promulgated by the Commanding General, Second Marine Aircraft Wing, FMF, Atlantic. Its general subject title is "Barracks Management" and its stated purpose is "[t]o promulgate orders for the supervision of assigned barracks and for the regulation of the conduct of barracks occupants." Enclosure (2) to this Wing Order is titled "Barracks Regulations;" paragraph 15 provides that "Drugs or devices common to the use of drugs are prohibited."

2. The specification under scrutiny recites:
In that Private First Class Wayne R. DYKES, U. S. Marine Corps, presently on active duty in the U. S. Marine Corps, Wing Engineer Squadron 27, Marine Wing Support Group 27, Second Marine Aircraft Wing, Fleet Marine Force, Atlantic, Marine Corps Air Station, Cherry Point, North Carolina, did, at Barracks 235, Marine Corps Air Station, Cherry Point, North Carolina, on or about 6 March 1978, while on active duty in the U. S. Marine Corps, violate a lawful general order, to wit: paragraph 15, enclosure (2), Second Marine Aircraft Wing Order 11101.7B, dated 2 November 1977, by wrongfully having in his possession drug related paraphenalia [sic], to wit: one (1) smoking pipe, cigarette rolling papers, and three (3) syringes.
Appellant's pleas excepted the last three words of the allegation and the prosecution offered no evidence as to these.

tary duties and which, therefore, may not lawfully direct his conduct, specifically with regard to restrictions upon possession of personal property. We find, however, that the order in question properly relates to military service and lawfully required appellant's compliance.

So elementary as not to require citation is the proposition that to lawfully impel compliance, a military order must itself be lawful. In the case of general orders, lawfulness is inferred unless they are " . . . contrary to the Constitution, the laws of the United States, or lawful superior orders or for some other reason [are] beyond the authority of the official issuing [them] . . .." Paragraph 171a, *Manual for Courts-Martial, United States, 1969* (Revised edition). Since a constitutional or statutory proscription or superior order is neither alleged nor found to be the basis of appellant's present challenge, under the facts of this case, the question thus turns to whether or not the order under scrutiny was outside the scope of lawful power of the issuing authority, *i. e.* appellant's commanding general.

It has long been recognized that whether or not the issuance of a particular order is authorized is, in large measure, determined by examination of the circumstances under which that order is issued. *See* Winthrop, Military Law and Precedent 576 (2d ed. 1920). Of prime importance is the determination of whether or not the order in fact relates to a military duty. If it does not, the conclusion would be inescapable that the order is unlawful. *See* paragraph 169b, *Manual, supra; United States v. Musguire,* 9 U.S.C.M.A. 67, 25 C.M.R. 329 (1958).

Appellant, through counsel, asserts that the order which he violated unreasonably deprived him of a right not related to the performance of a military duty. Thus, to effectively dispose of this contention we must discern whether or not the performance of a military duty is at the core of the rationale which prompted promulgation of the order; whether or not appellant had a right either related or unrelated to the performance of that duty; and, finally, if a requirement for the performance of such a duty existed and appellant was deprived of any right, whether or not that deprivation was unreasonable.

We note at the outset that the term "military duty" encompasses not only those pursuits normally construed as martial but also all activities which are reasonably necessary to safeguard or promote the morale, discipline, and usefulness of the members of any particular command and which are directly connected with the maintenance of service good order. *United States v. Martin,* 1 U.S.C.M.A. 674, 5 C.M.R. 102 (1952); para. 4–28, *Military Judge's Guide* (DAPAM 27–9). In the instant case, the avowed purpose of the basic order, of which paragraph 15 is a part,[3] was to provide for the supervision of assigned Wing berthing spaces and for the regulation of conduct of individuals assigned to and occupying those spaces. This is clearly a fitting subject in relation to any command's morale, discipline, and usefulness, and is directly connected with the maintenance of good service order. A command's personnel should be afforded some assurance that their off-duty hours are not interfered with by the thoughtlessness, nuisance, and outright criminality of others. This is what we believe the officer who issued this particular order had in mind at the time he promulgated it. As his is the ultimate responsibility for the welfare and performance of those placed in his charge, not only was he lawfully empowered to issue such an order, but he was under an affirmative obligation to do so. Had he failed to act in this regard to protect the personnel integrity of his command, he might well have left himself open to an allegation of professional nonfeasance.

At trial, appellant pled guilty to wrongfully possessing drug-related paraphernalia, to wit: a smoking pipe and a quantity of

3. *See* note 1, *supra.*

cigarette rolling papers. During the *Care* [4] inquiry, he indicated in his responses to the military judge that both the wooden pipe and the papers were used solely to facilitate the use of marijuana. Possession and use of marijuana by persons in the Naval Service is prohibited.[5] All personnel within the Naval Service, including the Commanding General whose order is at issue, are directed to take those steps reasonably calculated to prevent and eliminate the unauthorized use of this proscribed substance.[6] It appears altogether logical that the most effective way of complying with this latter mandate is for persons placed in positions of leadership and authority to outlaw those things which are inexorably intertwined with the stated unlawful activity [7], which, but for their associated possession and use, could not be consummated. In essence, appellant complains that he had a "right" to possess the wooden pipe and cigarette rolling papers. However, he admits that their sole purpose and utility to him were in conjunction with the use of a prohibited substance, marijuana.

▆▆▆ Marijuana can not be used unless it is possessed. In that possession of marijuana is itself unlawful, marijuana can only be categorized as contraband. *See* Black's Law Dictionary 393 (4th ed. 1951); *Rea v. United States,* 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956). In this regard it is "contraband *per se,*" as distinguished from "derivative contraband," which is property in and of itself innocuous, but which takes on an illegal character when associated with the perpetration of an unlawful act. *See Kane v. McDaniel,* 407 F.Supp. 1239, 1242 (W.D.Ky.1975); *Blackman v. Brotherhood Protective Order of Elks, Toccoa Lodge*

*1820,* 232 Ga. 671, 208 S.E.2d 483, 484 (1974); *People v. Zimmerman,* 44 Ill.App.3d 601, 3 Ill.Dec. 317, 358 N.E.2d 715, 718 (1976); *Commonwealth v. Fassnacht,* 246 Pa.Super. 42, 369 A.2d 800, 802 (1977). This latter definition is clearly applicable to the wooden smoking pipe and the cigarette rolling papers in that their facially legal character dissolves with their infusion in a criminal enterprise of which they are patent instrumentalities. *Cf. Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, 788 (1967); *Lipscomb v. Stewart,* 436 F.Supp. 863, 866 (S.D.Ala.1977); *United States v. Bowdach,* 414 F.Supp. 1346, 1353 (S.D.Fla.1976); *People v. Green,* 45 Ill. App.3d 506, 4 Ill.Dec. 158, 359 N.E.2d 1110, 1112 (1977); *Commonwealth v. One 1958 Plymouth Sedan,* 414 Pa. 540, 201 A.2d 427, 429 (1964). Since appellant's avowed purpose in possessing these items was to actively engage in criminal conduct—the use of marijuana—his intent underscores the nature of the items as contraband and thus their seizure and forfeiture could lawfully divest appellant of any possessory "right" he might otherwise have had in them. *See Hemenway & Moser Co. v. Funk,* 100 Utah 72, 106 P.2d 779, 783 (1940).

▆▆▆ Even assuming, *arguendo,* that appellant's mere possession of these devices in his barracks area was lawful, we still do not believe that he suffered an unreasonable deprivation of such possessory right by the order's enforcement. The order here prohibited possession of a certain class of personalty:[8] It is beyond cavil that while such an order may reasonably limit the exercise of an individual service-person's rights, it may not arbitrarily or unreasona-

---

**4.** *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

**5.** U. S. Navy Regulations, 1973, Article 1151.2.

**6.** *See id.,* Article 1151.1.

**7.** While Article 1151, U. S. Navy Regulations, 1973, does not prohibit *per se* the possession and use of drug related paraphernalia, we believe that the spirit and intent of this article fairly contemplates a manner of lawful regulation reasonably calculated to effectuate its purpose. Here, the Commanding General was un-

der a duty to endeavor to prevent and eliminate the unauthorized use of marijuana, narcotic substances, and other controlled substances. He was lawfully empowered to issue general orders, the provisions of which were binding on all those subordinate to him. In issuing the order in question, his intent clearly was to comply with his duty to act in a specific area to discharge a distinct responsibility.

**8.** *See* note 1, *supra.*

bly interfere with the private rights or personal affairs of these military members. Thus, where an order is found to be reasonably in furtherance of a service's duty to protect the morale, discipline, and usefulness of its members, it may be enforced although in deprivation of an established private right or interest. *See e. g., United States v. Wartsbaugh,* 21 U.S.C.M.A. 535, 45 C.M.R. 309 (1972); *United States v. Wheeler,* 12 U.S.C.M.A. 387, 30 C.M.R. 387 (1961). However, where such a connection is lacking and the order is broadly restrictive of a private right unrelated to a military need, the order is arbitrary and illegal and perforce will be struck down. *See, e. g., United States v. Smith,* 23 U.S.C.M.A. 542, 50 C.M.R. 713 (1975); *United States v. Aycock,* 15 U.S.C.M.A. 158, 35 C.M.R. 130 (1964); *United States v. Wilson,* 12 U.S.C.M.A. 165, 30 C.M.R. 165 (1961); *United States v. Nation,* 9 U.S.C.M.A. 724, 26 C.M.R. 504 (1958); *United States v. Wysong,* 9 U.S.C.M.A. 249, 26 C.M.R. 29 (1958). But what of appellant's possession of the pipe and smoking papers? Appellant would have us believe that the Government has not shown that the order in question is aimed at the regulation of activity which is of such a nature as to necessitate curtailment based upon a valid military requirement. In this we believe he has the shoe on the wrong foot. Rather, it is for appellant to show that there is no rational connection between the order and proper service objectives and responsibilities. *United States v. Young,* 1 M.J. 433 (C.M.A.1976) *citing Kelly v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). *See also United States v. Verdi,* 5 M.J. 330, 332 (C.M.A.1978). This he has failed to do. Under these circumstances we cannot conclude that the deprivation was unreasonable. *See United States v. Tee,* 20 U.S.C.M.A. 406, 43 C.M.R. 246 (1971); *see also United States v. Caballero,* 23 U.S.C.M.A. 304, 49 C.M.R. 594 (1975) and cases cited therein at 49 C.M.R. 596 n.5.

Accordingly, the findings and sentence, as approved below, are affirmed.

Senior Judge BAUM and Judge GRANGER concur.