UNITED STATES, Appellee

v

MICHAEL E. BRATCHER, Private, U. S. Army, Appellant

19 USCMA 125, 39 CMR 125

No. 21,418

February 14, 1969

Captain Dennis R. Hunt argued the cause for Appellant, Accused. With him on the brief were Colonel Daniel T. Ghent and Major David J. Passamaneck.

Captain David K. Fromme argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel David Rarick and Major Edwin P. Wasinger.

## Opinion of the Court

FERGUSON, Judge:

Accused pleaded guilty before a general court-martial to absence without leave (Charge I), willful disobedience of a lawful order of a noncommissioned officer (Charge II), and to an Additional Charge (two specifications) of willful disobedience of a lawful command of a commissioned officer, in violation of Articles 86, 91, and 90, Uniform Code of Military Justice, 10 USC §§ 886, 891, and 890, respectively. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for four years. The convening authority reduced the period of confinement to two years, but otherwise approved the findings and sentence.

The board of review further reduced the confinement to eighteen months. We granted review to consider the following assignments of error:

"1. Whether the Specifications of the Additional Charge are sufficient to allege violations of Article 90, Uniform Code of Military Justice.

"2. Assuming the Specifications of the Additional Charge sufficiently allege violations of Article 90, Uniform Code of Military Justice, whether punishment therefor is limited to the offense alleged in the Specification of Charge II."

The two specifications of the Additional Charge are identical with exception of the hour of the day on

**125**

which the disobedience allegedly occurred.

"Specification 1: In that Private (E1) Michael E. Bratcher, U. S. Army, Student Detachment, Madigan General Hospital, Tacoma, Washington, having received a lawful command from Captain Edward J. Boland, his superior officer, to perform duties as a duty soldier, the duties to be performed to be assigned to him by the First Sergeant, did, at Madigan General Hospital, Tacoma, Washington, on 29 June 1967, at approximately 0900 hours, willfully disobey the same.

"Specification 2: . . . 1300 hours, willfully disobey the same."

In view of the accused's plea of guilty neither the prosecution nor the defense presented any evidence on the merits. Attached to the record of trial, however, as Prosecution Exhibit 2, is the following stipulation which was read to the court by trial counsel during the proceedings in extenuation and mitigation:

"HEADQUARTERS FORT LEWIS
Fort Lewis, Washington

"UNITED STATES        ⎫
         v.              ⎬ 25 October 1967
Michael E. Bratcher   ⎭

STIPULATION

"This stipulation is not intended to set out each and every element of the offenses charged as the accused has pleaded guilty. Rather, its purpose is to give the general circumstances surrounding the offenses charged for the information of the court.

"It is hereby stipulated by and between the trial counsel and the defense counsel, with the express consent of the accused, Private (E1) Michael E. Bratcher, that the following are the true facts concerning the offenses for which the accused is now standing trial:

At approximately 0900 hours on 29 June 1967, First Sergeant (E9) Arnold Stern of AMEDS Company, Madigan General Hospital, brought the accused to the office of Captain Edward L. Boland, the Executive Officer of AMEDS Company and the Student Detachment at Madigan. Sergeant Stern informed Captain Boland that the accused has refused to work. Captain Boland read the accused his Article 31 (UCMJ) rights and informed him of his right to counsel. At this point the accused gave to Captain Boland a note he had written which stated that he was a conscientious objector to the military service and asked to be freed from the obligation to serve as a soldier. Captain Boland told the accused that he was not required to bear arms at this time but that he was required to work as a duty soldier. Captain Boland then ordered him to work as a duty soldier and perform those duties assigned to him by the First Sergeant. The accused then stated that he refused to obey the order. First Sergeant Stern was present throughout this entire conference. The accused then stood by for about five minutes in First Sergeant Stern's office while the First Sergeant called the Madigan Provost Marshal's office to have the accused placed in detention.

In order to insure that the accused had full opportunity to comply with the order, Captain Boland had the accused returned to his office at 1300 hours on the same day. Again, in the presence of Sergeant Stern, Captain Boland ordered the accused to work as a duty soldier and perform the duties prescribed by the First Sergeant. Then the First Sergeant ordered the accused to pick up the sickle leaning against Captain Boland's desk and cut the tall weeds near the parking lot behind barracks one. When the accused did not pick up the sickle, Sergeant Stern asked him if he was refusing to obey his order. The accused answered yes.

On 7 July 1967 the accused submitted a request for separation from the service because of con-

scientious objection. This request for separation from the service has been denied by the Adjutant General of the Army.

The accused absented himself without proper authority from his unit, the Student Detachment, Madigan General Hospital, on 10 June 1967, and remained so absent until he was apprehended by the Armed Forces Police in Seattle, Washington, on 22 June 1967.

/s/ Lawrence L. Piersol
LAWRENCE L. PIERSOL
Captain, JAGC
Trial Counsel

/s/ Larry E. Bengtson
LARRY E. BENGTSON
Captain, JAGC
Defense Counsel

/s/ Michael E. Bratcher
MICHAEL E. BRATCHER
Private (E1)
RA 19 874 471
Accused"

It is the position of appellate defense counsel that the specifications of the Additional Charge are so defective in content that they allege *no offense*. Initially they contend that the directives of Captain Boland did not command the appellant "to do or cease doing a *particular thing at once.*" (Paragraph 169*b*, Manual for Courts-Martial, United States, 1951.) (Emphasis supplied.) Rather, they merely identified the person from whom the appellant could subsequently expect to receive orders (the First Sergeant). Such a directive is so intangible, broad, vague and all-inclusive as to be illegal. (United States v Wilson, 12 USCMA 165, 30 CMR 165; United States v Wysong, 9 USCMA 249, 26 CMR 29; United States v Milldebrandt, 8 USCMA 635, 25 CMR 139.) In addition, according to counsel for the appellant, since the Government chose to prosecute the accused under specifications alleging "a unique composite offense in which the precedent crime is an element, it was fatal to the specifications not to allege even the bare existence of the predicate of-

fense," or to fail to allege, with regard to the predicate offense, appellant's knowledge thereof, his duty to obey, or his willful disobedience. (United States v Huff, 15 USCMA 549, 36 CMR 47.) Finally, they assert that the specifications allege such a vague order as to render them so indefinite and uncertain as to fail to inform the accused of what he must defend against. (Paragraph 87*a*(2), Manual, supra; United States v Johnson, 3 USCMA 174, 11 CMR 174.)

The arguments of appellate counsel for the Government are essentially threefold:

(1) The test for sufficiency of a specification is not whether it could be made more definite and certain but whether it alleges the elements of the offense charged, apprises the accused of what he must defend against, and protects him against subsequent jeopardy. (United States v Sell, 3 USCMA 202, 11 CMR 202; United States v Phillips, 7 USCMA 737, 23 CMR 201; United States v Autrey, 12 USCMA 252, 30 CMR 252.) Abbreviated pleadings are allowed in military law. (United States v Paulk, 13 USCMA 456, 32 CMR 456; United States v Tamas, 6 USCMA 502, 20 CMR 218).

(2) The offense of willful disobedience of a superior officer occurs when an accused receives a certain lawful command from a certain superior commissioned officer and that accused willfully disobeys the command. A specification which alleges these essential elements, alleges an offense (Paragraph 169*b*, Manual, supra) unless the particular facts alleged are legally inoperative to constitute such an offense. (United States v Bunch, 3 USCMA 186, 11 CMR 186; United States v Crooks, 12 USCMA 677, 31 CMR 263.) Since the specifications in this case do not contain even a hint of illegality they come within the ambit of the rules and thus have legal efficacy.

(3) The Captain's orders required accomplishment by the accused of military duty and both the stipulation and his provident plea of guilty es-

tablish his willful disobedience. (United States v Stout, 1 USCMA 639, 5 CMR 67.)

While appellate counsel for both the Government and the defense touch peripherally on the question presented, we believe that they overlook the crux of the issue; namely, the *nature* of the order given to the accused "to perform duties as a duty soldier, the duties to be performed to be assigned to him by the First Sergeant."

Article 90, Code, supra, proscribes the willful disobedience of a lawful command of a superior commissioned officer. With reference to this provision of the Code, the Manual, supra, provides that:

"The willful disobedience contemplated is such as shows an intentional defiance of authority, as when an enlisted person is given a lawful command by an officer to do or cease doing *a particular thing at .once* and refuses or deliberately omits to do what is ordered." [Paragraph 169*b*, page 321.] [Emphasis supplied.]

The specifications and the stipulation in the case at bar make it crystal clear that the order did not contemplate performance or nonperformance of some *special function* but rather it was an order that the accused was to perform his duties as a soldier by obeying his superiors, an obligation he was already under by reason of his status as a soldier and as a subordinate to the Captain and the First Sergeant. Article 2, Code, supra. In short, the order in effect told the accused to obey the injunctions of Article 90 and 91 of the Code. While this is commendable as a form of counselling, to hold its violation punishable under Article 90 is quite something else.

In commenting on the twenty-first Article of War, the predecessor of Article 90 of the Code (restated as Article 64, 62 Stat 627, June 24, 1948), Winthrop, in his An Abridgment of Military Law, Fourth and Revised Edition, page 231, states that "the order, whether it be oral or written, must

be a *specific* mandate." (Emphasis supplied.) The "order" in this case dealt with no specific subject as such but was only an exhortation to the accused to do his duty as a soldier. No order is needed for that.

Similarly, we find in Snedeker, Military Justice Under the Uniform Code, § 2904e, Willful Disobedience, page 607, that: "(1) The 'command' contemplated by the offense of willful disobedience is an express and personal one, one of a specific character as distinguished from one of general scope."

In United States v Bunch, supra, we held that a specification is legally sufficient although it omits the specific terms of the order, *if it describes the order clearly and specifically and sets out the act which constituted the violation*. However, mere allegation of the order and the act does not necessarily guarantee a legally unassailable charge. See United States v Strand, 6 USCMA 297, 20 CMR 13. Determination of the validity of a charge involving the violation of an order requires consideration not only of the source, but also the content of the order. United States v Milldebrandt, supra. See also United States v Crooks, supra. As the *Bunch* case itself points out, the specification may be fatally deficient because of matters affecting the order. Cf. United States v Wysong, supra; United States v Aycock, 15 USCMA 158, 35 CMR 130; United States v Enloe, 15 USCMA 256, 35 CMR 228.

Just as an order placing one on restriction because of a belief that unless restricted he would commit a crime is unlawful (United States v Haynes, 15 USCMA 122, 35 CMR 94), so, too, an order to obey the law can have no validity beyond the limit of the ultimate offense committed. In short, the two specifications of the Additional Charge in this case having no legal efficacy beyond the charge of disobedience of the First Sergeant's order (Charge II), fail to state an offense.

Inasmuch as the original maximum confinement at hard labor for the charged offenses was believed to be

five and one-half years, and the maximum for the remaining offenses is one year, a rehearing on the sentence is in order. United States v Voorhees, 4 USCMA 509, 16 CMR 83.

Accordingly, the decision of the board of review affirming the finding of guilty of the Additional Charge is reversed. The Additional Charge and its specifications are dismissed. The decision of the board as to Charges I and II is affirmed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing on sentence on the remaining charges may be ordered.

Chief Judge QUINN and Judge DARDEN concur.