UNITED STATES

v.

**Captain Steven L. YARBROUGH, 452–84–0448 FR, United States Air Force.**

**ACM 22622.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 12 Sept. 1979.

Decided 4 Sept. 1980.

Appellate Counsel for the Accused: Colonel Larry G. Stephens and Colonel George R. Stevens.

Appellate Counsel for the United States: Colonel James P. Porter and Major Robert T. Mounts.

Before EARLY, ARROWOOD and KASTL, Appellate Military Judges.

## DECISION

KASTL, Judge:

The accused, a dental officer, was charged under Article 90, Uniform Code of Military Justice, 10 U.S.C. § 890, with willfully disobeying the command of his superior officer, the hospital commander, "to perform your normal dental care duties and see and treat such patients as may be assigned to you in the Dental Clinic" at Bergstrom Air Force Base, Texas.

Tried by general court–martial with members, the accused despite his pleas, was found guilty. He was sentenced to dismissal from the service, confinement at hard labor for one year, and forfeiture of $200 per month for 12 months. The convening authority approved the sentence.

Appellate defense counsel cite six errors for our consideration.

I

Accused argues that the military judge erred by denying the defense motion to make the specification of the charge more specific. In essence, the defense sought to have the entire order included in the specification so as to place it in context and

apprise the fact–finders of the surrounding circumstances.[1]

■ We hold that recitation of the entire order in the specification was not required. The well–settled test for sufficiency of specifications was stated by the United States Court of Military Appeals in *United States v. Sell*, 3 U.S.C.M.A. 202, 11 C.M.R. 202, 206 (1953):

> The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what ex-

tent he may plead a former acquittal or conviction.

■ Here, the elements of the crime were clearly set forth, and the ability of the accused to defend himself or to avoid subsequent double jeopardy was unhampered. Nor did the Government attempt to selectively introduce evidence relating to circumstances surrounding the order; in fact, the entire order was introduced into evidence by the prosecution. Accordingly, we perceive no possible prejudice to accused.[2]

## II

■ Accused also argues that the charge fails to state an offense under Article 90, Code, *supra*, since the words amounted to an exhortation to perform routine duties already required of him. *United States v.*

1. The written order states:
   [E]ffective at 0730 hours, 28 March 1979, you will perform your duties as stated in Attachment 27, AFR 36–1, dated 1 March 1977. Specifically, you will perform your normal patient dental care duties and see and treat such patients as may be assigned to you in the Dental Clinic.
   Furthermore:
   . . . any efforts by you, directly or indirectly, to subvert this order by discouraging your patients from receiving treatment from you, for other than bona fide medical/dental reasons, will constitute a violation of this order. Accordingly, you are directed to refrain from entering into conversations with your patients regarding your qualifications which may cause them alarm or apprehension.
   In addition, the hospital commander subsequently proscribed accused's desire to inform patients that he was being ordered to see them.

2. In a similar vein, the accused argues that the military judge erred in failing to dismiss the charge because the order, as given, unconstitutionally foreclosed his First Amendment freedom of speech rights, thus making performance impossible. More specifically, he argues that the order prohibited him from communicating effectively with his patients so as to obtain informed consent for dental procedures. We discern that accused suggests several quite different subject areas are purportedly protected by a constitutional right of free speech: (1) communications with patients to the degree necessary to obtain informed consent for treatment; (2) his desire to apprise them of substandard clinic conditions; and (3) his wish to inform them of the restrictions imposed on him

by the hospital commander–i. e., that the accused had been ordered to treat them and was doing so under duress.

As for the first matter, the accused's communicating with patients to obtain informed consent, we find no factual foundation for the contention that he was prevented from obtaining it. To the contrary, he was free to discuss "bona fide medical/dental reasons," and to discourage treatment for legitimate reasons. In short, the total testimony of the commander and hospital administrator confirm that the commander in no way barred accused from giving professional care or from obtaining informed patient consent.

Turning to the remaining matters involving claims of Free Speech, we find that the threshold of a constitutional issue has not been met. There were two distinct portions to the entire order: (a) treat patients; and (b) don't discuss your personal problems while doing so. Accused speculates that (b) is violative of his Free Speech rights and therefore he was free to disobey both (a) and (b). The short answer is that the two portions of the entire order are distinct and severable, and he is not charged with violating (b). Therefore, he cannot defend against his failure to obey the first by explaining why the second might have been defective.

Yet even if we were to grant accused's position, arguendo, we would reject the contention that the accused's freedom of speech in this instance was constitutionally protected. *Schenck v. United States*, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919); *United States v. Priest*, 21 U.S.C.M.A. 564, 45 C.M.R. 338 (1972).

*Bratcher*, 19 U.S.C.M.A. 125, 39 C.M.R. 125 (1969). We disagree.

In *Bratcher*, the United States Court of Military Appeals considered a situation where his superior officer ordered a recalcitrant accused to work as a soldier and to perform those duties assigned to him by the First Sergeant. Reversing a conviction under Article 90, Code, *supra*, the Court held that the order did not contemplate performance of some special function; rather, it only required the accused to perform his duties as a soldier by obeying his superiors. This was a compulsory obligation already by reason of accused's military status.

Later, in *United States v. Cates*, 45 C.M.R. 597 (AFCMR 1972), an accused sought to bring his situation within the ambit of *Bratcher*: Consonant with Black Muslim and conscientious objector beliefs, Airman Cates decided he would no longer wear the uniform or perform military duties. After counselling proved ineffective, he was ordered by his superior officer, in writing, "to perform . . . duties as a Military Public Health Technician during normal duty hours as scheduled." Affirming the conviction, we held that Cates had been ordered to perform duties–albeit general–in uniform at a particular place and time. This transcended the broad direction to obey general military orders found in *Bratcher*. Moreover, the commander had supported the order with the full authority of his office and "transformed a routine duty into a direct, personal, and particular requirement within the ambit of Article 90." We specifically found *Bratcher* distinguishable.

Applying these precedents to the facts at hand, we hold that the present situation is controlled by *Cates*, a strikingly similar fact situation.

The hospital commander fully and personally committed the authority of his office to obtaining the accused's compliance, and the accused's disobedience directly flaunted the commander's authority. Furthermore, this order went far beyond an injunction to accomplish general, routine duties under the direction of one's superiors. To the contrary, it encompassed a specific mandate: accused was ordered to perform specific military dental care duties at a particular time, date, and place–the sole unknown factor was the name of the patient to be seen. Indeed, it is difficult to imagine any order which could have been more clearly set forth. Therefore, it is clear that both the source and the content of the order given by the hospital commander transcend a broad direction to obey general military orders–the limited fact situation in *Bratcher*.

We have considered the other errors assigned by appellate defense counsel and find adversely to the accused as to each.

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

EARLY, Chief Judge, and ARROWOOD, Senior Judge, concur.