DECISION
CEDARBURG, Chief Judge.
Appellant was tried by special court-martial, military judge alone, on 21-23 July 1982. Contrary to his pleas, he was found guilty of absence without leave from 23 February 1982 to 12 March 1982, larceny of currency, property of the United States, of a value of more than $100, disrespect in language to a Chief Petty Officer and failure to obey the order of a Chief Petty Officer in violation of Articles 86,121, 91 & 92, UCMJ, 10 U.S.C. §§ 886, 921, 891, 892. He was sentenced to a bad conduct discharge, confinement at hard labor for 3 months, forfeiture of $300 pay per month for 3 months and reduction to pay grade E-l. The sentence was approved without change by the convening and supervisory authorities. Upon completion of confinement on 7 October 1982, appellant was placed on required appellate leave provided *518 for by Article 76a, UCMJ, 10 U.S.C. § 876a and remains in that status. Appellant was erroneously placed on required appellate leave at the time of the completion of his confinement but before the action of the officer exercising general court-martial authority approved the sentence on 14 February 1983. Appellant was subsequently authorized and paid back pay and allowances from 7 October 1982 to 14 February 1983 as a result of an Article 138, UCMJ, 10 U.S.C. § 938 complaint. Appellant has alleged the following errors:
I
THE MILITARY JUDGE ERRED TO THE MATERIAL PREJUDICE OF APPELLANT IN DENYING THE DEFENSE MOTION TO DISMISS CHARGES III and IV.
II
THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING OF GUILTY AS TO CHARGE II.
III
THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING OF GUILTY AS TO CHARGE IV.
IV
THE MILITARY JUDGE ERRED TO THE MATERIAL PREJUDICE OF APPELLANT IN ADMITTING PROSECUTION EXHIBITS 24, 27, 28, 32 and 33.
V
APPELLANT HAS BEEN PREJUDICED BY THE INORDINATE DELAY EXPERIENCED IN THE POST-TRIAL REVIEW OF THIS CASE.
VI
THE RECORD OF TRIAL IS INCOMPLETE AND MUST BE RETURNED TO THE CHIEF COUNSEL BEFORE IT CAN BE CONSIDERED BY THIS COURT.
VII
THE INVOLUNTARY APPELLATE LEAVE SYSTEM ITSELF, AND AS APPLIED IN THIS CASE, DENIED APPELLANT DUE PROCESS AND EQUAL PROTECTION OF LAW, AND IS SUBJECTING APPELLANT TO ADDITIONAL AND UNUSUAL PUNISHMENT.
We choose to exercise our statutory fact-finding authority in this case. In the exercise of that function we find the following pertinent, operative facts. Appellant, a member of the U.S. Coast Guard, was attached to the U.S. Coast Guard Support Center, Governors Island, New York, during February 1982. His duties at that time were as an assistant to the petty officer in charge of the Clothing Locker. One of his duties was to act as cashier at the Clothing Locker, operating the cash register and maintaining control and custody of the cash register receipts. On 20 February 1982, appellant was the sole cashier at the Clothing Locker from the time it opened at 0900 until it closed at 1500. The Clothing Locker was closed from closing time, 20 February 1982 until opening time 23 February 1982. The petty officer in charge discovered a shortage of U.S. currency, determined by audit to be $903.10, which was the property of the United States, when he opened the Clothing Locker on 23 February. The U.S. currency determined to be missing was stolen by the appellant on 20 February 1982. Appellant then departed Governors Island and checked into a motel in Atlantic City, New Jersey later that evening. He checked out the following day, 21 February 1982 and returned to U.S. Coast Guard Support Center, Governors Island. Appellant absented himself, without authority, such absence commencing 23 February 1982 and he remained an unauthorized absentee until 12 March 1982. We further find that appellant received and had knowledge of an order from a Chief Petty Officer *519 to remove a “walkman radio” while in uniform and failed to obey the order on 2 July 1982. During the incident involving the disobeyed order, he was patently disrespectful in language to the Chief Petty Officer. Appellant first advised his defense counsel in early May 1982 that he had been robbed of the Clothing Locker receipts by two assailants who also threatened to “dispose” of him if he reported the robbery. Coast Guard Intelligence was notified of appellant’s report by his defense counsel in early May 1982. In view of the circumstantial evidence of guilt and appellant’s poor reputation for truth and veracity, we specifically find that appellant’s testimony regarding the robbery and threat was contrived and not credible.
We now consider in turn each of appellant’s assignments of error.
I
Appellant asserts, citing paragraphs 26c and 1286, MCM 1969 (Rev.), that the military judge erred when he denied the defense motion to dismiss Charges III & IV as a joinder of major and minor offenses. We reject his contention. Charge III alleged that appellant was disrespectful in language to a Chief Petty Officer. The maximum punishment authorized for disrespect to a petty officer is confinement at hard labor and forfeiture of two-thirds pay per month, each for a period of 6 months. Charge IV alleged that appellant failed to obey an order of a Chief Petty Officer. The maximum punishment for that offense is a bad conduct discharge, and confinement and forfeiture of two-thirds pay per month each for a period of 6 months. Reduction to the lowest enlisted pay grade would also be authorized. Paragraph 26c, supra is discretionary, not mandatory. Paragraph 1286, supra does not define, as contended by appellant, minor offenses as “misconduct of a kind which, if tried by general court-martial, could be punished by dishonorable discharge or confinement for more than one year.” The quotation is incomplete. The complete sentence conveys a different meaning thus: “[t]his term [minor] ordinarily does not include misconduct of a kind which, if tried by general court-martial, could be punished by dishonorable discharge or confinement for more than one year.” The specific provision of the Manual cited does not define; it is rather a sentence of exclusion, not inclusion. In context, the whole of paragraph 1286 discloses more generalized criteria for determining whether an offense is minor. Pertinent to such determination is the instruction that, “[generally, the term ‘minor’ includes misconduct not involving any greater degree of criminality than is involved in the average offense tried by summary court-martial.” Id.
This Court has recently observed, in holding that the convening authority did not abuse his discretion by a joinder of charges, that paragraphs 26c, 30# and 336 MCM 1969 (Rev.) must be read together and considered under the circumstances in determining whether there has been an abuse of discretion requiring dismissal of joined charges. United States v. Ward, C.G.C.M.S. 23727 (C.G.C.M.R. 14 May 1984). The charges appellant sought to have dismissed were objectively not minor. The maximum punishment authorized for the disobedience offense equaled the jurisdictional maximum of the special court-martial to which appellant’s case had been referred. The disrespect offense also authorized the jurisdictional maximum of confinement and forfeitures. Both offenses are core offenses significantly affecting good order and discipline. The discretion reposed in the convening authority was not abused in light of paragraphs 26c, 30# and 336, supra.
II
Appellant predicates his assertion of insufficient evidence solely upon his self-serving and non-credible testimony that two masked men entered the Clothing Locker, threatened him with a knife, stole the cash receipts, and threatened to kill him if he reported the robbery. He then locked up the store, went to Atlantic City on a date, which did not materialize, gambled, *520 returned to the Coast Guard Support Center and commenced an unauthorized absence for a considerable period of time. He did not report the robbery or even tell his defense attorney until almost three months later. Instead, he testified, he “lied” to his attorney, giving her a “phony” story. Pertinent also is the fact that appellant did not disclose the purported robbery until well after the Government had gathered evidence of his overnight stay in an Atlantic City motel on the night the cash register receipts were taken. Other circumstantial evidence introduced by the Government included appellant’s unauthorized absence immediately following the Clothing Locker loss, and his questionable reputation for veracity, testified to by his supervisor. On his own direct examination he admitted he told his brother he had taken the money to avoid, he explained, disclosing that he had been “robbed”.
The test to be applied in determining the sufficiency of the evidence is whether there is in the record, some competent evidence from which the members of the court-martial were entitled to find beyond a reasonable doubt, the existence of every element of the offense charged [citation omitted]. United States v. Papenheim, 19 U.S.C. M.A. 203, 205, 41 C.M.R. 203, 205 (1970) cited in United States v. Wilson, 6 M.J. 214 (C.M.A.1979).
The test for sufficiency of evidence has been amply met in this case, permitting the finding of guilty by the military judge and supporting the findings of fact detailed above by this Court.. Appellant’s testimonial disavowal of the larceny, as with all denials, may have injected a hypothesis or possibility of innocence, but the posture of the evidence in the present case excluded “... any fair and rational hypothesis except guilt____” paragraph 74 a. (3) MCM 1969 (Rev.). United States v. Harville, 14 M.J. 270 (C.M.A.1982). The direct evidence in this case and what could be inferred from the circumstantial evidence, despite appellant’s testimonial disavowal, was sufficient to establish guilt beyond a reasonable doubt. United States v. Barnes, 15 M.J. 121 (C.M.A.1983).
Ill
Appellant bases his contention that the evidence is insufficient as a matter of law to support the findings of guilty as to Charge IY upon two prongs. The first prong he asserts is that no positive command was ever given to the appellant to remove the “walkman radio” which was the subject of the orders violation alleged. True it is that the Chief may have used polite language and explained the reason for requiring appellant to take off the “walkman”. It is equally apparent however, from the testimony of Chief Mangahas and of Subsistence Specialist Third Class Roldan that during the course of the incident which erupted into a vituperation by the appellant against the Chief, a clear, positive order, which called for immediate compliance was not immediately obeyed by the appellant.
Appellant’s second prong is that since there was a preexisting duty by regulation not to wear the “walkman”, it was therefore not punishable as a violation of Article 92. United States v. Quarles, 1 M.J. 231 (C.M.A.1975) is dispositive. In Quarles, it was stated:
Appellant misperceives the applicable law.
It is true that this Court has had occasion to engage in the exercise of discerning the true “ultimate offense” involved in an alleged violation of an order laid under Article 90 or 91.3 The rationale is that “an order to obey the law can have no validity beyond the limit of the ultimate offense committed.” United States v. Bratcher, 19 U.S.C.M.A. 125, 128, 39 C.M.R. 125, 128 (1969). However, our concern in this area is that the giving of an order, and the subsequent disobedience of same, not be permitted thereby to escalate the punishment to which an accused otherwise would be subject for the ultimate offense involved. See United States v. Jenkins, 22 U.S.C. M.A. 365, 47 C.M.R. 120 (1973); Unit *521 ed States v. Wartsbaugh, 21 U.S.C. M.A. 535, 45 C.M.R. 309 (1972). While this apprehension is valid with respect to charges of violating Articles 90 or 91, it is of no import and, indeed, is irrelevant when the offense is charged under Article 92, due to the sentence restriction applicable thereto found in footnote 5 of the Table of Maximum Punishments paragraph 127c Manual for Courts-Martial, United States, 1969 (Rev.).
Id. at 232. Appellant’s assignment is without merit.
IV
The prosecution, following appellant’s conviction, sought to introduce in aggravation, a series of documentary exhibits, objected to by trial defense counsel, consisting of, among others, Administrative Remarks (page 7) entries, which included exhibits 24, 27 and 28. Appellate defense counsel again asserts these exhibits were improperly admitted. Trial defense counsel objected on two bases. The stated grounds were, (1) the administrative entries were discretionary — not mandatory — under the Personnel Management Information System (PMIS) and (2) the entries cataloged a listing of UCMJ offenses asserting that they were done. In relation to exhibits 24 and 27, trial defense counsel withdrew the second ground for her objection, admitting that the entries did not allege any particular act of misconduct. The portion of Exhibit 28, dealing with specific misconduct, was “whited out” to meet the objection raised by trial defense counsel and the remaining entries were completely inocuous as they appear in the record. The military judge, who directed the deletion, is presumed to have arrived at his sentence without consideration of the material deleted.
Appellate defense counsel asserts additional bases for objection than those raised at trial. We conclude that the objections raised for the first time on appellate review by appellate defense counsel are waived by failure to object on these grounds at trial. MRE 103(a); United States v. Lambert, 17 M.J. 600 (N.M.C.M. R.1983).
The only remaining issue of admissibility then, is the first ground advanced at trial by trial defense counsel. The Personnel Management Information System (COMDTINST M1080.5A) authorizes the use of Administrative Remarks to provide a chronological record of miscellaneous entries not recorded elsewhere in an enlisted service record. There is no provision that such entries be mandatory. Paragraph 75b (2) MCM 1969 (Rev.) permits introduction into evidence of all those personnel records of an accused which reflect past military efficiency, conduct, performance and history. Exhibits 24, 27 and 28 were properly admitted under this authority.
Prosecution Exhibit 32, Marks, (page 6), contained appellant’s Proficiency, Leadership and Conduct Marks for the period from 4 December 1978 to 31 December 1979. Trial defense counsel originally did not object to the marks themselves but only to the reference to non-judicial punishment (NJP) on the Mark Sheet. She subsequently also objected to the marks but then agreed that a redaction of reference to the NJP would remove her objection. The military judge directed that not only reference to the NJP be deleted, but also directed that the conduct marks affected by the NJP themselves be redacted. Trial defense counsel then stated she would have no objection. Any further objection was thereby waived and cannot be resurrected on appellate review. MRE 103(a); United States v. Lambert, supra. Although the Conduct Trait Mark was not deleted, the military judge stated on the record that, while the NJP had some impact on the conduct mark, he would not draw any inference from the conduct marks as an indirect way of considering an inadmissible NJP. We are satisfied he was sensitive to the possible inadmissible NJP and acted in accordance with his stated intent.
Exhibit 33 is a Court Memorandum (page 4) from the service record of the *522 appellant. It documents a non-judicial punishment on 13 June 1980 for a 3 day unauthorized absence which resulted in a punishment of 10 days restriction, 10 days extra duty and a suspended forfeiture of $175 pay per month for 2 months. Trial defense counsel objected to its introduction on the basis that there was no showing that the requirements of United States v. Booker, 5 M.J. 238 (C.M.A.1977) were complied with. Despite the Government’s argument to the contrary, we are not persuaded that the record affirmatively establishes that appellant, 1. was advised of his right to confer with an independent counsel before exercising an option to be punished at non-judicial punishment, and 2. waived his statutory right under Articles 15 and 20, UCMJ, 10 U.S.C. §§ 815, 820 to remove his case to a criminal proceeding. Absent compliance with these requirements, evidence of imposition of discipline under Article 15 and Article 20 is inadmissible in any subsequent trial by court-martial. Id, at 243. The Government merely presented testimony of the military personnel officer of pre-mast procedures which were uniformly followed at the command. While we recognize that forms of evidence other than a completed and signed acknowledgment of rights/acceptance of NJP form are acceptable alternatives, the testimony of the military personnel officer in this case did not supply the quantum or quality of evidence necessary to assure that appellant was properly advised of his rights and waived them. Considering the seriousness of the offenses of which appellant stands convicted, the other aggravation evidence properly admitted, and the sensitivity to all sentencing issues demonstrated by the military judge, we are convinced that this error had no appreciable impact on the sentence adjudged by the military judge and we are convinced that the appellant was not prejudiced by the introduction of the record of punishment by non-judicial punishment for a relatively minor unauthorized absence. United States v. Sauer, 15 M.J. 113 (C.M.A.1983); United States v. Cisneros, 11 M.J. 48 (C.M.A.1981).
VI
Appellant contends he has been denied a speedy disposition in the post-trial review of his case. Included in the broadside attack is not only the 205 day delay between sentencing and the action by the supervisory authority, but also the period of time between the date on which the record of trial was received in the Office of Chief Counsel of the U.S. Coast Guard (2 March 1983) and the date that a specific formal appointment of the present appellate defense counsel, at his behest, was made by the General Counsel, Department of Transportation. (2 April 1984)
We conclude, contrary to appellant’s contention, that the provision of Article 70(a), UCMJ, 10 U.S.C. § 870(a), which provides that, “[t]he Judge Advocate General [General Counsel, Department of Transportation] shall detail to his office one or more commissioned officers as appellate Government counsel and one or more commissioned officers as appellate defense counsel, who are qualified under section 827(b)(1) of this title (Article 27(b)(1)”, has been met. The only commissioned officers in the Department of Transportation, qualified under Article 27(b)(1), UCMJ, 10 U.S.C. § 827(b)(1), are law specialists of the U.S. Coast Guard. These military officers are assigned for duty in accordance with U.S. Coast Guard personnel management policies subject to the requirement of Article 6(a), UCMJ, 10 U.S.C. § 806(a), that the assignment shall be made upon the recommendation of the Chief Counsel, U.S. Coast Guard acting under the delegated authority from the General Counsel, Department of Transportation, [Judge Advocate General]. Appendix A to Part 1, 49 CFR. In addition, the authority to forward records which must be referred to a Court of Military Review under Article 66(b), UCMJ, 10 U.S.C. § 866(b) has also been delegated by the General Counsel to the Chief Counsel. Id. The Chief Counsel, routinely and in this case specifically, assigned appellate counsel concurrent with his referral of cases to the Court of Military Review. Although the Court is aware of no specific *523 delegation from the General Counsel related to the requirement to detail of appellate counsel “in his office”, the delegation of authority to the Chief Counsel to effect assignments to duty of law specialists is coextensive and encompasses the detail of officers assigned within his office to accomplish appellate counsel duties. Their assignment for duty in the Office of the Chief Counsel, and indeed, their specific designation as appellate counsel by the Chief Counsel pursuant to the powers and duties conferred by Articles 6(a) and 66(b) UCMJ by delegation from the General Counsel, is a de jure and de facto compliance with the provision of Article 70(a) which dictates the detailing of appellate counsel. Appellant’s contention is novel but lacks substance. Form cannot be allowed to prevail over the fact that appellant has been represented by commissioned officers detailed as appellate counsel in the Department of Transportation and certified in accordance with Article 27(b)(1), UCMJ since referral of his case to this Court.
We find no improper delay in this case after referral to this Court attributed by appellant to the purported failure to appoint counsel in accordance with Article 70(a). We are also not unaware that the Court of Military Appeals in United States v. Johnson, 3 M.J. 143 (C.M.A.1977) has observed, in relation to delay occurring before appellate courts, that it “... need not now concern itself with the alleged improper delays the case experienced once it was at issue before the Court of Military Review.22 [23 While an appellate court is not wholly unanswerable for seemingly inordinate periods of time utilized in disposing of a case before it, see Higdon v. Bailey, Misc. Docket No. 75-62 (C.M.A. Jan. 14, 1976), the interests involved at the appellate level and the very functions of appellate courts make a certain amount of delay ‘normal’.]” Id. at 150.
We conclude that the delay subsequent to referral to this Court was “normal”, having been occasioned primarily by defense requests for delay in order to file pleadings. We therefore direct our attention to the delay in disposition from the date the sentence was adjudged until the supervisory authority took action. Although United States v. Clevidence, 14 M.J. 17 (C.M.A.1982), which announced a radical remedy of dismissal of charges for post-trial delay in disposition of cases, was decided over 2‘years ago, the exact parameters for its application still remain only loosely defined. Intermediate appellate courts such as ours and authorities in the field, are thus forced to ponder what action is required in the interest of justice when “delay” arises in the disposition of a court-martial case. The problem is magnified when an objective analysis of the merits of the case reveals an accused who is guilty of serious offenses where no error materially prejudicial to the substantial rights of the accused has been committed. We are faced with that situation in this case. Reference to the exercise of our fact-finding functions announced above reveals our certitude that appellant was properly convicted of stealing a substantial sum of money entrusted to his care and control as cashier of the Clothing Locker at the Coast Guard Support Center Governors Island, NY; then absenting himself without authority shortly after the commission of the offense with a consciousness of his guilt of the larceny; and after his return to military control subsequently disobeying the direct order of a Chief Petty Officer and subjecting the Chief Petty Officer to vile, verbal abuse. We are convinced that the record supports the commission of objectively serious offenses which warrants affirmance of his conviction and an appropriate punishment. “A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.” Article 59(a) UCMJ, 10 U.S.C. § 859(a).
We fully support action by the Court of Military Appeals, in its supervisory role, to encourage and compel speedy post-trial disposition of eases. But a remedy of dismissal for delay where there has been no error in the proceedings which would require that a rehearing be held grossly outweighs *524 the Government delinquency in the post-trial delay in this case. See, United States v. Gray, 22 U.S.C.M.A. 422, 47 C.M.R. 484 (1973).
Clevidence, has produced 5 progeny from the Court of Military Appeals giving additional insight into the means to effectuate the intent of the Court to speed post-trial disposition of courts-martial. We interpret the instruction of these cases consistent with our belief that the Court of Military Appeals intended a rational, just result in exercising its supervisory role. In United States v. Clevidence, supra, the Court of Military Appeals, in an attempt to “... halt the erosion in prompt post-trial review of courts-martial ...”, found that under the circumstances of that case the delay in post-trial review (313 days delay) appeared to be prejudicial to the accused. They therefore set aside the findings of guilty and the sentence and dismissed the charges. The Court has since afforded the same relief in five other cases of inordinate post-trial delay. United States v. Bruton, 18 M.J. 156, 157 (C.M.A.1984) (299 day delay); United States v. Shely, 16 M.J. 431 (C.M.A.1983) (439 day delay); United States v. Flowers, 16 M.J. 444 (C.M.A.1983) (421 day delay); United States v. Sutton, 15 M.J. 235 (C.M.A.1983) (321 day delay); United States v. Gentry, 14 M.J. 209 (C.M.A.1982) (490 day delay). In none of these cases was there a showing of error which would have required a rehearing.
We glean from the above cases the following recurrent themes. In each of the cases, 1. there was an inordinate and unexplained or inadequately explained delay, 2. there was at least an assertion, in most cases supported by an affidavit executed by the appellant, of some type of prejudice resulting from the delay, unrebutted by the Government, and 3. there was a linkage described as “the circumstances of this case” between the inordinate unexplained delay and the assertions of prejudice. This third criterion, in effect, is a situational, functional analysis of disparate factors unique to the case under consideration. They include the nature and seriousness of the offenses, the length of the post-trial delay, the adequacy of the explanation of the delay, the nature and extent of the prejudice and the length and complexity of the record issues in the case. While each of these factors was not specifically quantified, a sum total of all the factors apparently drove the final determination to provide a remedial action.
We have previously adverted to the serious nature of the multiple offenses in this case. The offenses, although tried by special court-martial, included a traditional felony larceny, and serious military offenses going to the core of good order and discipline. The length of the delay was 205 days — long, but not egregiously so — in comparison with the length of delays in Clevidence and its progeny detailed above. The reasons for the delay in this case were not unexplained. The supervisory authority provided a bare chronology in forwarding the case for review by this Court. However, appellate Government counsel has augmented the record with a supplemental chronology and affidavit from the trial counsel which discloses no lack of reasonable diligence and steady progress towards completion.
The assertions of prejudice in this case are generalized assertions of appellant’s inability to obtain employment while in an appellate leave status, his inability to obtain job referral services and unemployment compensation benefits, and the collateral consequences affecting his finances and quality of life. These assertions by counsel are based upon representation by appellant in telephone conversations and a letter dated 29 November 1983 from appellant to the Commanding Officer, Coast Guard Support Center, New York. Significantly the allegations of prejudice are not supported by any credible “evidence” such as the affidavits submitted in most of the cases, cited above, in which the Court of Military Appeals has found prejudice.
We note that the Government has attempted to rebut representations of prejudice asserted by appellate defense counsel. A letter from the Director, Job Service *525 Division Virginia Employment Commission [appellant resides in Richmond, Virginia] indicates that that agency operates under regulations, formerly required by the federal government, which provide for the registration of any individual legally qualified to work, without regard to place of residence, current employment status or occupational qualifications. The letter also discloses that appellant could be served by the Virginia Employment Commission subject to limitations regarding registration as a “veteran” and qualification for unemployment insurance dependent upon not only discharge but the character of the discharge. The Government also has attached a letter from the Employment Representative of Safeway Stores Incorporated to demonstrate that a Separation Certificate, DD-214, is not a condition of first time employment with Safeway Stores, Inc. in Virginia.. We do not accord substantial weight to the Government’s rebuttal efforts because of the form in which they are submitted, but it appears to adequately address the counter representations of prejudice from the brief of opposing counsel. Further detracting from representations made on appellant’s behalf, is our belief, as demonstrated by our findings of fact predicated on the trial record, that appellant is not worthy of belief, even under oath.
The record in this case is 190 pages long with a total of 55 exhibits. While not unusually long, the affidavit of trial counsel in support of the chronology reflects that only 2 certified court reporters were available to the Third Coast Guard District. The detailed reporter in this case was assigned to one general court-martial and 3 bad conduct discharge special courts-martial during the time frame when this case was tried and the record was transcribed. The other court reporter had numerous records to transcribe during this period. Out-of-district court reporters were requested and utilized during the period in question. We are satisfied that reasonable priorities were set and the delay in transcribing the record of trial has been explained, though not to our complete satisfaction.
We conclude that, under the circumstances of this case, the delay, although lengthy, is not unexplained and prejudice to the appellant has not been adequately demonstrated to warrant either dismissal of the charges or sentencing relief.
VI
In his assignment of error, appellate defense counsel notes that there is no page 145 in the record of trial, but concedes that this may be a result of misnumbering. We are satisfied that mispagination is indeed the reason for the lack of a page number 145 from our reading of pages 144 and 146 which discloses a continuous transcript. Prosecution exhibit 15 was not attached to the original record of trial when it was received by this Court. Appellate Government counsel has obtained a true copy of the document entered as prosecution exhibit 15 and the affidavit of trial counsel explaining its original and redacted condition. Appellate counsel have informally agreed that the document submitted by the Government is a true copy and the record is now complete without necessity for a formal certificate of correction. We accept this agreement and consider the record is now complete and the assignment mooted.
VII
Appellant contends that the required appellate leave program provided for in Article 76a, UCMJ, is an unconstitutional delegation of legislative authority which denied appellant due process and equal protection of the law and subjects appellant to additional and unusual punishment. This Court has jurisdiction as delineated by Congress in the Uniform Code of Military Justice. The grant of authority is contained in Article 66(c), UCMJ, thus: “In a case referred to it, the Court of Military Review may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or part or amount of the sentence, as it finds correct in law and fact and determines, on *526 the basis of the entire record, should be approved.” As recognized by appellate defense counsel in his brief, authority to place an accused who has been sentenced to an unsuspended punitive discharge on required appellate leave is an administrative action enacted by Congress to save appropriated funds and eliminate the drain on the chain of command’s time and attention which would be devoted to a non-productive service member. H.R.Rep. No. 97-306, 97th Cong., 1st Sess., U.S.Code Cong. & Admin.News 1982, p. 2877. It is an administrative personnel action which is not subject to the appellate review of courts-martial conferred upon this Court. It is consequently beyond our jurisdiction. Article 66(c), UCMJ, See also, Dobzynski v. Green, 16 M.J. 84 (C.M.A.1983); Jones v. Commander, Naval Air Force, U.S. Atlantic Fleet, 18 M.J. 198 (C.M.A.1984) (Cook, Judge, concurring in the result). We cannot and should not construct a supervisory role over actions which we have no authority to correct. We leave this issue to a court whose jurisdiction empowers it to answer the question of the constitutionality of this Congressional enactment, and which has the authority to order an appropriate remedy. As was the case for erroneous appellate leave for the period from 7 October 1982 to 14 February 1983, corrective action, if justified, would appear to be entitlement to back pay and allowances.
We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings and sentence as approved on review below are affirmed.
Judges HOLLAND, BURGESS and BRIDGMAN concur.
Judge REINING did not participate in the decision in this case.