# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRIMBILL, ALDYKIEWICZ, and RODRIGUEZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class JAMES R. ROBERTSON II**
**United States Army, Appellant**

ARMY 20190452

Headquarters, United States Army Center for Initial Military Training
Daniel G. Brookhart, Military Judge
Lieutenant Colonel Richard E. Gorini, Staff Judge Advocate

For Appellant: Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Captain Joseph C. Borland, JA; Captain Paul T. Shirk (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Hannah E. Kaufman, JA; Captain R. Tristan C. De Vega (on brief).

23 March 2020

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

RODRIGUEZ, Judge:

That which is simple need not be made complex, and creative charging decisions in cases that are based upon simple facts can lead to legally insufficient convictions. This is such a case.

On appeal under Article 66, UCMJ, appellant raises one assignment of error. Specifically, appellant asserts that his conviction for violating a lawful order is legally insufficient because the government's charging decision does not comport

with the evidence deduced at trial. As we discuss in detail below, we agree with appellant.[1]

## BACKGROUND[2]

While appellant was under investigation for possessing child pornography, his company commander placed restrictions on appellant's liberty. Specifically, on 1 March 2018, appellant's company commander informed appellant, in writing, that he was "restricted to 'post' until further notice," and appellant needed to seek approval from the company commander to "leave 'post' for any reason." At the time, appellant resided on Fort Eustis, Virginia. The order did not specify the meaning of the word "post," nor did it clarify if "post" was defined as Fort Eustis, Langley Air Force Base, or Joint Base Langley-Eustis. At trial, appellant's company commander testified that by "post" he meant the order to pertain to Fort Eustis, Virginia, and that he believed appellant understood "post" to mean Fort Eustis, Virginia.

In 2011, seven years prior to the restrictions placed on appellant, Fort Eustis and Langley Air Force Base were unified as a single military installation, Joint Base Langley-Eustis. While the two installations were unified in 2011, they remain geographically separated by approximately twenty miles. It is impossible to travel between Fort Eustis and Langley Air Force Base without traversing civilian roads outside the separate military reservations.

While appellant's restrictions were still effective in November 2018, appellant departed Fort Eustis and drove to Langley Air Force Base to play video games with a friend. After presenting his identification card at a Langley Air Force Base entry control point, appellant was detained by the gate guards.

Based on appellant's departure from Fort Eustis and travel to Langley Air Force Base, the government charged appellant with violating a lawful order, specifically the commander's order restricting appellant to "post." Rather than simply alleging the appellant violated his restriction to "post," or perhaps "Fort

---

[1] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of absence without leave, one specification of failure to obey a lawful order, and one specification of possession of child pornography, in violation of Articles 86, 92, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 892, and 934 [UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for twenty-four months, and reduction to the grade of E-1.

[2] The factual recitation below is limited to those facts necessary to resolve the assignment of error raised by appellant.

Eustis, Virginia," the preferred specification alleged the lawful order required appellant "to remain on Joint Base Langley-Eustis."[3]

At trial, the defense moved to dismiss the Article 92, UCMJ, charge and its specification for failing to state an offense, arguing that "post," as referenced in the company commander's order, included all of Joint Base Langley-Eustis. As such, the defense argued, appellant was entitled to travel between Fort Eustis and Langley Air Force Base, even though the two installations are geographically separated. The military judge denied the defense motion. In doing so, the military judge noted it would be possible for the finder of fact to make findings by exceptions and substitutions that would not be a fatal variance. Specifically, the military judge found that "any difference in the order as alleged and the order, as issued, is not [a] fatal variance and is subject to findings by exceptions and substitutions by the trier of fact." While the military judge, sitting as the trier of fact, ultimately convicted appellant of violating the company commander's order, he did so without any exceptions and substitutions.

## LAW AND DISCUSSION

This Court holds findings of guilt legally sufficient when any rational fact finder "could have found all essential elements of the offense beyond a reasonable doubt." *United States v. Nicola*, 78 M.J. 223, 226 (C.A.A.F. 2019) (citations omitted). In conducting our legal sufficiency review, we are obligated to draw "every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Robinson*, 77 M.J. 294, 298 (C.A.A.F. 2018) (citations omitted). "As such, the standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation and internal marks omitted).

Even drawing every reasonable inference in favor of the government in this case, we still find appellant's conviction for violating his company commander's order legally insufficient. This case is a perfect example of a faulty charging

---

[3] The charged specification reads as follows:

> In that [appellant], having knowledge of a lawful order issued by [his company commander] *to remain on Joint Base Langley-Eustis, Virginia,* an order which it was his duty to obey, did, at or near Fort Eustis, Virginia, on or about 14 November 2018, fail to obey the same by wrongfully leaving post and traveling to Langley Air Force Base, Virginia.

decision precluding the government from obtaining a conviction that is correct in law and fact. *See* UCMJ art. 66(d)(1).

The government could have effectively charged appellant's violation at least two separate ways. First, and undoubtedly the simplest course of action, the government could have charged appellant with failing to remain on "post," as ordered by appellant's company commander. In doing so, the government could have elicited the testimony from the company commander that appellant understood "post" to mean Fort Eustis, and that the facts showed he violated the order the moment he left "post." Such a charging decision would likely have led to a conviction correct in law and fact.

Second, and equally as effective, the government could have charged appellant with failing to remain on Fort Eustis. Again, in this instance, the government would simply need to establish that appellant understood he was restricted to the confines of Fort Eustis through the company commander's testimony, and that the facts showed he violated the order the moment he left "Fort Eustis." This charging decision would have likewise resulted in a sufficient conviction.

However, rather than charging appellant's violation in either of the two fact-based ways discussed above, the government elected to charge appellant with failing "to remain on Joint Base Langley-Eustis."[4] In choosing "Joint Base Langley-Eustis" as the situs for appellant's restriction, the government was required to prove that appellant unlawfully departed Joint Base Langley-Eustis. The government did not, and could not, prove appellant departed Joint Base Langley-Eustis under the facts of this case.

Because of the government's charging decision, the issue before us is whether an appellant, while having conditions placed on their liberty, can lawfully travel directly between two places an appellant is authorized to frequent, even if the travel takes him or her through a restricted area. We find that if the company commander's

---

[4] "Words have meaning and legal effect -- it's rather important that the right words are utilized." *United States v. Torres*, 1997 CCA LEXIS 669, *4 (N-M. Ct. Crim. App. 31 Dec. 1997). When alleging disobedience of an order by a subordinate, the order disobeyed must be "clearly and specifically" described and "set out the act which constituted the violation." *United States v. Bratcher*, 19 U.S.C.M.A. 125, 39 C.M.R. 125, 128 (C.M.A. 1969) (citation omitted). Here, the government chose, for unknown reasons, to specify Joint Base Langley-Eustis as the limits of appellant's movements when a review of the documentary evidence and record testimony reveals that appellant and his commander never discussed either "Langley Air Force Base" or "Joint Base Langley-Eustis."

order actually restricted appellant to Joint Base Langley-Eustis as charged, appellant would have been able to lawfully travel between both locations, provided his travel between the two locations was direct and did not include unauthorized stops.[5] Accordingly, based on the way the government elected to charge the Article 92, UCMJ, violation in this case, it was required to prove appellant did not travel directly between Fort Eustis and Langley Air Force Base. There is simply no evidence appellant travelled anywhere else.

We agree with the military judge that appellant could have been effectively convicted though findings by exceptions and substitutions at the trial level, and such findings would not constitute a fatal variance. In fact, had the military judge made such findings by exceptions and substitutions, as the military judge noted as possible in his written ruling, we would have undoubtedly affirmed appellant's Article 92, UCMJ, conviction. However, appellant was found guilty as charged, and such a finding is legally insufficient under the facts of this case.[6]

Having determined that appellant's conviction for violating his company commander's order is legally insufficient, we next must determine if we are able to reassess appellant's sentence. We find that we are able to do so in this case.

Courts of Criminal Appeals are authorized to conduct sentence reassessments. *United States v. Winckelmann*, 73 M.J. 11, 13-14 (C.A.A.F. 2013) (citing *Jackson v. Taylor*, 353 U.S. 567, 577 (1957)). "[I]f the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *Id.* at 15 (quoting *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986)).

---

[5] *See generally United States v. Delaney*, 2017 CCA LEXIS 650, at *7, 11-12 (N.M. Ct. Crim. App. 17 Oct. 2017) (discussing authorized, unescorted travel between "place of duty, worship, mess, billeting, and areas required to carry out his duties" as part of a restriction tantamount to confinement analysis); *United States v. Bangeas*, 2015 CCA LEXI 329, at *32-34 (A.F. Ct. Crim. App. 13 Aug. 2015) (discussing authorized, unescorted travel between "food, work, the gym, and appointments with his attorney and alcohol counselor" as part of a restriction tantamount to confinement analysis).

[6] We are cognizant that on appeal, we are prohibited from making findings by exceptions and substitutions, or revising the basis on which an appellant is convicted. *See United States v. English*, 79 M.J. 116, 119 (C.A.A.F. 2019) (citations omitted).

Courts of Criminal Appeals must consider the "totality of the circumstances presented" by an appellant's case when conducting sentence reassessments. *Id*. Among the circumstances, courts should consider: (1) dramatic changes in the penalty landscape and exposure; (2) whether appellant chose sentencing by members or by military judge alone; (3) whether the nature of the remaining offenses capture the gravamen of the criminal conduct originally charged; and (4) whether the remaining offenses are the type that Courts of Criminal Appeals are familiar with and can reasonably determine what sentence would have been imposed at trial. *Id*. at 15-16.

In evaluating the *Winckelmann* factors here, we first find only a minor change in the penalty landscape. The potential maximum sentence to confinement decreased from eleven years and six months to eleven years, a sentence far greater than that adjudged. Second, we note appellant elected to be tried by a military judge sitting alone. Third, we find the nature of the remaining offenses capture the gravamen of appellant's criminal conduct. Appellant remains convicted of possessing child pornography, by far the most egregious crime of which appellant was convicted. Finally, based on our experience as judges on this court, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial based on the remaining specifications.

Based on our analysis, we are confident appellant's sentence would have been at least that which was adjudged at trial even if the military judge found appellant not guilty of Additional Charge III and its specification.

## CONCLUSION

The guilty findings for Additional Charge III and its specification are SET ASIDE, and Additional Charge III and its specification are DISMISSED. The remaining guilty findings are AFFIRMED. The sentence is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision are ordered restored.

Chief Judge KRIMBILL and Senior Judge ALDYKIEWICZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

6